[No. G032597. Fourth Dist., Div. Three. June 29, 2005.]

EMERALD BAY COMMUNITY ASSOCIATION, Plaintiff and Appellant, v. GOLDEN EAGLE INSURANCE CORPORATION, Defendant and Respondent.

## COUNSEL

Prenovost Normandin Bergh & Dawe, Michael G. Dawe; Snell & Wilmer, Richard A. Derevan, Marc L. Turman and Michael S. McIntosh for Plaintiff and Appellant.

Richard H. Benes; Ault Davis & Schnofeld, Richard P. Edwards; Koeller Nebeker Carlson & Haluck and Sharon A. Huerta for Defendant and Respondent.

## OPINION

**RYLAARSDAM, J.**—Plaintiff Emerald Bay Community Association sued defendant Golden Eagle Insurance Corporation for allegedly failing to promptly investigate and respond to a request that it provide a defense in a pending lawsuit and by eventually denying coverage existed for the claim. Before trial, one department of the superior court denied defendant's motion for summary judgment or summary adjudication of issues, which, in part, argued no liability existed because a second insurer had defended and indemnified plaintiff in the underlying lawsuit. At trial held in another department, the court bifurcated certain legal issues and tried them without a jury. (Code Civ. Proc., § 592.) It found plaintiff had no supportable damages for breach of contract or breach of the covenant of good faith and fair dealing. In addition, although the court suggested plaintiff amend the complaint to allege an assignment of the second insurer's claims against defendant, plaintiff declined to do so. Only long after the trial court ruled for defendant did plaintiff seek leave to amend its complaint to allege the assignment. The court denied that motion.

Plaintiff appeals the judgment, contending: (1) The second judge's ruling constituted an invalid reconsideration of the first judge's denial of the motion for summary judgment/adjudication; (2) it incurred cognizable damages permitting the matter to proceed to a jury trial; and (3) the trial court erred by denying the motion to amend the complaint. We affirm the judgment. Notwithstanding the pretrial motion ruling, the trial judge had jurisdiction to determine whether plaintiff had incurred cognizable damages and, based on the record before us, he correctly determined plaintiff failed to plead or prove it suffered any compensable loss. On the third issue, the court did not abuse its discretion in denying plaintiff's posttrial motion to amend the complaint.

## FACTS

Plaintiff is the homeowners association for a common interest residential development. Diana and George Lopez, the owners of a residence in plaintiff's development, sued plaintiff and the members of its board of directors over a dispute concerning the Lopezes' efforts to construct improvements to their residence. The Lopez complaint sought injunctive relief and damages for the lost use of and damage to their property, and contained a cause of action for discrimination in violation of the Unruh Civil Rights Act (Civ. Code, § 51), alleging members of plaintiff's board had made disparaging comments about the Lopezes.

Plaintiff carried a $2 million commercial general liability insurance policy issued by defendant. It also had a $1 million self-liquidating directors and officers liability policy and a $10 million excess/umbrella policy, both issued by Federal Insurance Company (Federal). Plaintiff tendered defense of the Lopez action to each insurer. The tender made to defendant appeared in a letter dated June 3, 1998.

Federal agreed to provide a defense under its directors and officers policy with a reservation of rights. At trial, the parties stipulated "Federal['s] . . . policies provided" both a "defense" and "some coverage for the Lopez lawsuit."

Thereafter, both plaintiff's counsel as well as Federal's representatives sent several requests to defendant concerning the tender and seeking a determination of coverage under its policy. In March 1999, defendant sent a check for $45,508 to a law firm that had represented plaintiff. Three months later, defendant sent written notice accepting the "tender of this lawsuit subject to a strict reservation of rights." The letter noted, "As this case develops, facts may arise showing that one or more exclusions previously listed or defenses to coverage may apply. . . . Furthermore, [defendant] expressly reserves and does not waive any right to raise other coverage defenses at any subsequent time, as circumstances may warrant . . . ." (Capitalization omitted.)

In September 2000, defendant sent plaintiff a letter stating that after "receiv[ing] [the Lopezes'] second amended complaint" and having "reviewed [it] in light of the coverages afforded under your polic[y]," it had "concluded . . . your polic[y] provide[s] no coverage for the claims set forth in the complaint." Defendant informed plaintiff that it would "be unable to provide [plaintiff] with a defense or indemnification in this matter." Nonetheless, the parties stipulated that defendant thereafter paid nearly $200,000 for attorney fees and defense costs on plaintiff's behalf.

Plaintiff filed this action against defendant in February 2001, stating causes of action for breach of contract, breach of the covenant of good faith and fair dealing, declaratory relief, and unfair business practices. Plaintiff alleged defendant breached the insurance policy by "failing to promptly respond to the tender of defense" or "thoroughly investigate the [Lopez] claim," "making false representations" to plaintiff, and "promising to provide coverage for defense and indemnity and then failing and refusing to do so." The complaint alleged plaintiff had sustained approximately "$600,000.00 in the form of defense costs and fees . . . paid by Federal," which "have . . . directly reduced the indemnity limits of the Federal policy . . . ." Finally, plaintiff alleged that, since defendant "failed to honor its duty to defend, or . . . participate . . . in attempting to protect its Insureds," plaintiff had "retained insurance coverage counsel in order to attempt to the obtain benefits to which it was entitled under its Policies."

In November 2001, plaintiff settled the Lopez action for $2 million. Federal funded the settlement. The parties stipulated that the amounts paid by Federal for defense and settlement of the Lopez action exceeded $3.3 million. They also stipulated that, of the $11 million in policy limits provided by Federal, "over $6,000,000 remained in unexhausted limits."

In early 2002, plaintiff and Federal executed a 16-page agreement. It provided: "Federal . . . agreed to conditionally advance and pay, . . . subject to the terms of this Agreement, the Defense Costs incurred . . . , as well as $2 million in settlement of the [Lopez] Action"; plaintiff "in consideration of Federal's agreement to advance the . . . Settlement [and] its payment of defense costs in the [Lopez] Action and . . . [the present suit], . . . hereby commits to repay said sums" and agreed to "pursue [defendant] for damages and, or, [sic] coverage under [defendant's] policy . . . ." Satisfaction of plaintiff's repayment obligation would occur by: "1. Full repayment to Federal . . . ; or, [¶] 2. Payment by [plaintiff] to Federal of any compromised amount accepted by Federal; or, [¶] 3. Payment of any amount . . . to Federal which is deemed to constitute satisfaction . . . ; or, [¶] 4. The final . . . ruling . . . against [plaintiff] in the legal proceedings against [defendant]." But plaintiff would "only be liable" to repay Federal "from funds actually paid to [plaintiff] by [defendant] . . . ."

In addition, the agreement contained a provision whereby Federal "conditionally assign[ed]" to plaintiff its rights against defendant, "subject to [plaintiff's] compliance with the obligations set forth in this agreement and . . . upon [plaintiff] having the right and standing to assert these claims

against [defendant]. . . . [I]n the event . . . it is ever determined that [plaintiff] is without legal standing to assert the conditionally assigned rights, such rights shall immediately revert to Federal."

Before trial, defendant moved for summary judgment. Noting the only damages alleged in the complaint were the fees and costs paid by Federal, defendant argued "[a]s a matter of law, an insured is not damaged when its insurer pays a claim." Judge Jonathon H. Cannon heard the motion and denied it, finding genuine issues of material fact existed.

The case was transferred to Judge David R. Chaffee for trial. He granted defendant's request under Code of Civil Procedure section 592 to bifurcate the trial and first try two legal issues without a jury: "[T]he first being . . . defendant's claim that the plaintiff[] . . . do[es] not have standing to assert the rights of another insurer who . . . paid a . . . settlement on behalf of the plaintiff"; and "[t]he other . . . has to do with the legal effect of the coverage that was afforded under [defendant's] policy . . . ."

Defendant argued plaintiff had suffered no recoverable damages because both it and Federal paid the defense costs and settlement, leaving as the only viable claim Federal's asserted right to reimbursement from defendant. While defendant conceded Federal could assign to plaintiff its rights against defendant, the complaint contained no allegation of an assignment of Federal's claims. After receiving the parties' joint stipulation of facts and numerous exhibits, plus listening to several days of argument, the court granted a motion for judgment in defendant's favor on the first issue. "As a matter of law, [plaintiff] has no supportable damages in this dispute. Its interest was and is entirely subsumed by the carrier Federal. [¶] As a matter of law, [plaintiff] has no legal interest to pursue save and except by way of assignment from Federal of its claims . . . . [¶] . . . [¶] I don't believe that [plaintiff] is properly in a position today to pursue the claims that it did not plead by way of . . . the original complaint or by way of amendment . . . ."

Several months after the court announced its decision, plaintiff moved to amend its complaint to add allegations concerning the circumstances of the Lopez settlement, the damages purportedly incurred by plaintiff as a result of it, and Federal's assignment of its rights to plaintiff. The court denied the motion and entered judgment for defendant.

## DISCUSSION

### The Trial Court's Jurisdiction to Consider Plaintiff's Standing

Plaintiff contends Judge Chaffee's ruling constituted "nothing more than a reconsideration of the exact same facts that Judge Cannon had decided in denying the summary judgment motion." Not so.

■ Except in circumstances governed by Code of Civil Procedure section 1008, if an action is transferred from one department to another, the latter may issue a ruling inconsistent with a prior interlocutory order made in the first department. (*Wrightson v. Dougherty* (1936) 5 Cal.2d 257, 265 [54 P.2d 13] [finding "without merit" a claim that where one department overruled a demurrer, "the trial court was bound by the previous order and was without authority . . . to grant a motion for judgment on the pleadings"]; *Haines v. Commercial Mtg. Co.* (1928) 206 Cal. 10, 12 [273 P. 35] [order vacating receivership upheld, rejecting claim the order "was invalid for the reason that in making [it the second judge] was exercising appellate jurisdiction over the order of the judge who granted the receivership"]; 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, § 237, p. 310.)

Contrary to plaintiff's analysis, Judge Chaffee's ruling did not amount to a reconsideration of Judge Cannon's order. Code of Civil Procedure section 1008 "applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion . . . ." (Code Civ. Proc., § 1008, subd. (e).)

■ Judge Cannon decided a motion for summary judgment, which focused on whether "all the papers submitted show that there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment . . . ." (Code Civ. Proc., § 437c, subd. (c).) Denial of a motion for summary judgment does not establish any fact or resolve any issue; it merely determines that the issues will be decided later, at the time of trial.

Judge Chaffee, on the other hand, treated defendant's motion for nonsuit as a motion for judgment under Code of Civil Procedure section 631.8, and granted it at the completion of plaintiff's introduction of evidence in the trial's first phase. Section 631.8 authorizes the trial court to "weigh the evidence and . . . render a judgment in favor of the moving party" once the opposing party "has completed his [or her] presentation of evidence in a trial by the court . . . ." (Code Civ. Proc., § 631.8, subd. (a).) Unlike the scope of Judge Cannon's ruling on the summary judgment motion, Judge Chaffee

could weigh the evidence and make factual findings based on the evidence presented at trial. (*Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1255 [54 Cal.Rptr.2d 340].)

■ In *Community Memorial Hospital v. County of Ventura* (1996) 50 Cal.App.4th 199 [56 Cal.Rptr.2d 732], the plaintiffs argued Code of Civil Procedure section 1008 precluded the trial court from granting a motion for summary adjudication because "the issues adjudicated were essentially the same propositions of law which the [defendant] argued and lost on demurrer." (*Community Memorial Hospital v. County of Ventura, supra,* at p. 204.) The Court of Appeal disagreed. "[A] motion for summary judgment or adjudication is not a reconsideration of a motion overruling a demurrer. They are two different motions. To hold that a trial court is prevented in a motion for summary judgment or adjudication from revisiting issues of law raised on demurrer is to condemn the parties to trial even where the trial court's decision on demurrer was patently wrong. The result would be a waste of judicial resources, the very evil Code of Civil Procedure section 1008 was intended to avoid. Nothing in the language of section 1008 compels its application to the instant motion for summary adjudication. In fact, to apply it here would run contrary to its purpose." (*Id.* at p. 205.) Thus, Judge Chaffee had the authority to decide the standing issue in this case.

*Plaintiff's Right to Sue Defendant*

*Introduction*

The trial court entered judgment for defendant after finding plaintiff "suffered no cognizable damages" on the first cause of action for breach of contract or the second cause of action for breach of the implied covenant of good faith and fair dealing. Although the complaint's third and fourth counts sought declaratory and injunctive relief, plaintiff does not claim that the trial court erred in failing to rule in its favor under either of them. Thus, we treat any objection to this aspect of the trial court's judgment as waived. (*Bagley v. International Harvester Co.* (1949) 91 Cal.App.2d 922, 924 [206 P.2d 43] [since appellant presented arguments concerning only the first and second causes of action, the third cause of action was "deemed abandoned"]; *Universal Ins. Co. v. Manhattan M. Line* (1947) 82 Cal.App.2d 425, 428 [186 P.2d 437] [where appellant makes no argument or reference to two causes of action, any claimed error concerning them is waived].)

As for the trial court's no compensable damages finding, plaintiff challenges it on several grounds. First, plaintiff asserts the postsettlement agreement with Federal entitled it to recover in its own right. Second, plaintiff claims that, since defendant knew about the postsettlement agreement with

Federal, the court erred in relying on plaintiff's failure to adequately allege the assignment of Federal's rights. Finally, citing defendant's allegedly unreasonable delay in providing policy benefits and its ultimate denial of them, plaintiff argues it can also recover for breach of the covenant of good faith and fair dealing even though defendant and Federal paid all of its defense and indemnification costs. All of these claims lack merit.

*Breach of Contract*

The complaint alleged defendant breached its contractual duties by failing to timely investigate the Lopez claim or provide plaintiff with a defense in that action, making false representations concerning its intent to protect plaintiff's rights, and ultimately denying it was obligated to defend or indemnify plaintiff for any recovery. The first cause of action generically alleged plaintiff sustained "financial damages" because of defendant's conduct. But the only specific damage allegation was "$600,000.00 in the form of defense costs and fees which have been paid by Federal."

■ An insurer's obligation to provide its insured with a defense arises when it "ascertains facts which give rise to the potential of liability under the policy." (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276–277 [54 Cal.Rptr. 104, 419 P.2d 168]; see also *Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 791 [244 Cal.Rptr. 655, 750 P.2d 297].) If a potential for liability exists, an insurer is obligated to provide an immediate and complete defense to the action. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 49 [65 Cal.Rptr.2d 366, 939 P.2d 766].) The fact that one insurer may owe a duty to provide a defense will not excuse a second insurer's failure to honor its separate and independent contractual obligation to defend. (*Continental Cas. Co. v. Zurich Ins. Co.* (1961) 57 Cal.2d 27, 37–38 [17 Cal.Rptr. 12, 366 P.2d 455].)

■ But to support an action at law for breach of contract, the plaintiff must show it has suffered damage. (*Bramalea California, Inc. v. Reliable Interiors, Inc.* (2004) 119 Cal.App.4th 468, 473 [14 Cal.Rptr.3d 302]; *Patent Scaffolding Co. v. William Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 511 [64 Cal.Rptr. 187].) "Contractual damages are 'the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.' [Citations.]" (*Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 831 [61 Cal.Rptr.2d 909]; see also Civ. Code, § 3300.) The general measure of damages for a breach of the duty to defend an insured, even if it is ultimately determined there is no coverage under the policy, are

the costs and attorney fees expended by the insured defending the underlying action. (*Hogan v. Midland National Ins. Co.* (1970) 3 Cal.3d 553, 564 [91 Cal.Rptr. 153, 476 P.2d 825]; *Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1793 [23 Cal.Rptr.2d 73].) Where the policy provides coverage for the claim and, as occurred in this case, the insured settles the underlying action, an insured may also recover from the insurer the amount of any reasonable, good faith settlement. (*Isaacson v. California Ins. Guarantee Assn., supra,* 44 Cal.3d at p. 791; *Tradewinds Escrow, Inc. v. Truck Ins. Exchange* (2002) 97 Cal.App.4th 704, 712 [118 Cal.Rptr.2d 561].)

■ Since defendant paid a portion of plaintiff's legal expenses and Federal, which concededly had an independent obligation to defend and indemnify plaintiff in the Lopez action, paid the balance of those expenses plus the settlement, plaintiff cannot show it suffered any contract damages. (*Bramalea California, Inc. v. Reliable Interiors, Inc., supra,* 119 Cal.App.4th at pp. 474–475.) The complaint admitted the contractually recoverable "damages" sustained by plaintiff before filing the action consisted of "defense costs and fees which have been paid by Federal . . . ." Plaintiff did not allege that either it or its board was subject to other pending third party claims, the defense of which had exhausted Federal's director's and officer's policy limits. In fact, at trial the parties stipulated to the following facts: (1) "Federal['s] . . . *policies* provided some coverage" and "defense for the Lopez lawsuit"; (2) the defense costs in the Lopez action were paid by either defendant or Federal; (3) "the Lopez lawsuit settled for $2,000,000 which was paid by . . . Federal"; and (4) "Federal . . . provided *policy* limits to the Plaintiff of $11,000,000, of which over $6,000,000 remained . . . unexhausted." (Italics added.)

*Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165 [96 Cal.Rptr.2d 136] presents an analogous situation. There the insured sued its insurer for breach of contract and breach of the covenant of good faith and fair dealing after the insurer declined to provide a defense in two lawsuits asserting defamation claims. The Court of Appeal affirmed a judgment for the insurer, primarily because there was no evidence the insured made a defamatory statement during the policy period. (*Id.* at pp. 1186–1187.) But the appellate court also noted, "even if we harbored a reasonable doubt that respondents might have had a duty to defend because of some conceivably arguable possibility or potential of coverage [citations], California law would still not permit Ringler to recover damages for breach of the duty to defend. . . . Ringler suffered no liability in excess of the Policy limits; nor was it compelled or unable to defend itself. Instead, . . . it was fully protected from having to pay any costs of its own defense by other insurers who were on the risk when Ringler allegedly first slandered the

plaintiffs in [the underlying litigation]. [¶] . . . Ringler was adequately protected by other insurers, and respondents' withdrawal from its defense did not enhance its defense liability or increase the costs it incurred in defense of the underlying lawsuits. [Citations.]" (*Id.* at pp. 1187–1188, italics omitted.)

Another analogous case is *Tradewinds Escrow, Inc. v. Truck Ins. Exchange, supra,* 97 Cal.App.4th 704, where the court affirmed a defense judgment in an insured's action against its commercial general liability insurer, rejecting a claim for posttender defense costs paid by the insured's errors and omissions carrier. "[S]uch costs may not be recovered where other insurers were on the risk and assumed the insured's defense. [Citation.]" (*Id.* at p. 712.) Holdings in other cases are also consistent with our decision. (See *Bramalea California, Inc. v. Reliable Interiors, Inc., supra,* 119 Cal.App.4th at pp. 472–473 [contractor sued for construction defects could not recover attorney fees from subcontractors under indemnity provisions of subcontracts obligating them to pay the contractor's attorney fees where the fees were paid by the contractor's own insurer]; *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* (2002) 100 Cal.App.4th 1017, 1042–1043 [123 Cal.Rptr.2d 256] [insured who settled with one insurer for an unallocated portion of the defense and settlement costs incurred can only "recover . . . the balance of the unreimbursed indemnification expense that it incurred"]; *Prichard v. Liberty Mutual Ins. Co.* (2000) 84 Cal.App.4th 890, 909 [101 Cal.Rptr.2d 298] [where multiple insurers potentially provide coverage, an insured cannot insist the "insurers should *each* be required to pay the whole of an attorney's bill"]; *Ceresino v. Fire Ins. Exchange* (1989) 215 Cal.App.3d 814, 823 [264 Cal.Rptr. 30] [where one insurer paid for insured's defense in underlying litigation, second insurer's failure to do so "was of no consequence" to insured].)

■ As explained in *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279 [77 Cal.Rptr.2d 296], "The fact that several insurance policies may cover the same risk does not increase the insured's right to recover for the loss, or give the insured the right to recover more than once. Rather, the insured's right of recovery is restricted to the actual amount of the loss. Hence, where there are several policies of insurance on the same risk and the insured has recovered the full amount of its loss from one or more, but not all, of the insurance carriers, the insured has no further rights against the insurers who have not contributed to its recovery. Similarly, the liability of the remaining insurers to the insured ceases, even if they have done nothing to indemnify or defend the insured." (*Id.* at p. 1295, italics omitted.)

Citing the postsettlement agreement, which described Federal's defense and indemnification payments as an "advance" and required plaintiff to pursue defendant to recover them, plaintiff argues it was entitled to "sue in its own capacity." But plaintiff's argument ignores the stipulated facts and the effect of the foregoing cases. The parties conceded Federal's policies both obligated it to defend plaintiff and afforded at least some coverage for the claims asserted in the Lopez action. Consequently, Federal also had an immediate obligation to provide plaintiff and its board of directors with a defense in that lawsuit and an obligation to contribute to the settlement. The mere fact plaintiff and Federal agreed between themselves to characterize Federal's payments as a loan does not alter the legal effect of what occurred. Defendant's alleged liability for the breach of its contractual obligations was reduced to the extent both it and Federal paid the Lopez litigation expenses and by the amount Federal paid to settle that case.

Alternatively, plaintiff argues it can enforce Federal's rights in this action. First, we note the trial judge correctly acknowledged "[t]he complaint was never amended to allege the assignment" of Federal's claim against defendant. While the court afforded plaintiff an opportunity to amend the complaint, it declined to do so. Plaintiff's counsel argued "[t]he pleadings don't need to be amended" because Federal's rights "emanate[d]" from plaintiff's rights against defendant, and the postsettlement agreement "acknowledged we had the right to pursue the rights in the first place . . . ." This assertion is wrong.

■ Contrary to plaintiff's suggestion, the absence of an assignment allegation did not amount to a mere technicality. The pleadings establish the scope of an action and, absent an amendment to the pleadings, parties cannot introduce evidence about issues outside the pleadings. (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 32 [69 Cal.Rptr. 568, 442 P.2d 648]; *Hughes v. Blue Cross of Northern California* (1989) 215 Cal.App.3d 832, 858 [263 Cal.Rptr. 850].) Generally, one suing as an assignee must allege and prove the assignment to recover on the assigned claim. (*Ford v. Bushard* (1897) 116 Cal. 273, 276 [48 P. 119]; *Sterling Adjustment Co. v. Laher Auto Spring Co.* (1931) 116 Cal.App. 100, 101 [2 P.2d 408].) However, unless defendant could show it was misled or would be prejudiced by plaintiff's failure to allege the assignment, the trial court would have probably abused its discretion if it denied recovery solely on this ground. (*Casey v. Overhead Door Corp.* (1999) 74 Cal.App.4th 112, 121–122 [87 Cal.Rptr.2d 603], disapproved on other grounds in *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 481, fn. 1 [127 Cal.Rptr.2d 614, 58 P.3d 450].)

But the question arises, what claim could Federal assert against defendant? Federal was not a party to the insurance policy defendant issued to plaintiff, and generally, only a party to the contract may sue for breach of the agreement's terms. (*Seretti v. Superior Nat. Ins. Co.* (1999) 71 Cal.App.4th 920, 929 [84 Cal.Rptr.2d 315].) Thus, Federal could not sue defendant for the latter's failure to honor its contractual obligations to plaintiff. (*Gulf Ins. Co. v. TIG Ins. Co.* (2001) 86 Cal.App.4th 422, 430 [103 Cal.Rptr.2d 305].)

██ What remains is Federal's right to seek contribution from defendant for the amount of the payment exceeding its proportionate share of the defense and indemnification costs incurred in the Lopez action. (*Bramalea California, Inc. v. Reliable Interiors, Inc., supra,* 119 Cal.App.4th at p. 475, fn. 5.) Equitable contribution is a separate and distinct cause of action from one for breach of contract; it "permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation" so as to "accomplish substantial justice by equalizing the common burden shared by coinsurers, and to prevent one insurer from profiting at the expense of others. [Citations.]" (*Fireman's Fund Ins. Co. v. Maryland Casualty Co., supra,* 65 Cal.App.4th at p. 1293.) Thus, a claim for equitable contribution is based on a set of operative facts different from the factual allegations in plaintiff's complaint. More importantly, this cause of action limits recovery to that portion of the defense and settlement costs exceeding Federal's proportionate share. The "right of equitable contribution . . . is not based on any right of subrogation to the rights of the insured, and is not equivalent to ' "standing in the shoes" ' of the insured. [Citations.]" (*Id.* at p. 1294.) " 'This right is not a matter of contract, but flows " 'from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden.' " [Citations.] The idea is that the insurers are "equally bound," so therefore they "all should contribute to the payment." [Citation.]' [Citation.]" (*Id.* at p. 1295.)

Plaintiff sued defendant for breach of contract and breach of the covenant of good faith and fair dealing, not as the assignee of Federal's equitable contribution claim. It sought compensatory and punitive damages, not an apportionment of the defense costs and settlement paid in the Lopez action. As the trial judge recognized, "there was never any claim for contribution made in this complaint. This is strictly a claim based upon the breach of contract, breach of the [covenant] of good faith and fair dealing." Consequently, the trial court properly found plaintiff failed to establish any compensable damages supporting its breach of contract cause of action.

*Breach of the Covenant of Good Faith and Fair Dealing*

The complaint's second count alleged defendant's "conduct . . . constitutes a tortious violation of the covenant of good faith and fair dealing in the [p]olicy" and sought recovery of actual, special, and punitive damages. Plaintiff argues it is entitled to sue defendant in tort because "an insurer may be liable in bad faith for an unreasonable delay in payment or other misconduct despite full payment on the claim," and it has suffered additional damages "not compensated by Federal." (Italics omitted.) Defendant contends plaintiff cannot recover on this ground because "[t]here is no dispute in this case that [plaintiff] was always adequately defended and that defense was paid for by [defendant] and Federal."

In addition to the right to sue an insurer in contract, if the insurer acts unreasonably and without proper cause in failing to investigate a claim, refusing to provide a defense, or either delaying or failing to pay benefits due under the policy, the insured can sue in tort for breach of the covenant of good faith and fair dealing. (*Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 433 [58 Cal.Rptr. 13, 426 P.2d 173]; *Amato v. Mercury Casualty Co., supra,* 53 Cal.App.4th at p. 831.) "Insurance contracts are unique in nature and purpose. [Citation.] An insured does not enter an insurance contract seeking profit, but instead seeks security and peace of mind through protection against calamity. [Citation.] The bargained-for peace of mind comes from the assurance that the insured will receive prompt payment of money in times of need. [Citation.] Because peace of mind and security are the principal benefits for the insured, the courts have imposed special obligations, consonant with these special purposes, seeking to encourage insurers promptly to process and pay claims. . . . [¶] . . . To avoid or discourage conduct which would thus frustrate realization of the contract's principal benefit (i.e., peace of mind), special and heightened implied duties of good faith are imposed on insurers and made enforceable in tort." (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1148 [271 Cal.Rptr. 246].)

Nonetheless, where one insurer fully protects the insured by providing a defense and full coverage for a claim, a second insurer's refusal to defend generally cannot support a tort action for breach of the covenant of good faith and fair dealing because the latter's conduct will not enhance the insured's cost of defending itself or its exposure to liability. (*Ringler Associates, Inc. v. Maryland Casualty Co., supra,* 80 Cal.App.4th at pp. 1187–1188; *Donahue Constr. Co. v. Transport Indem. Co.* (1970) 7 Cal.App.3d 291, 303–304 [86 Cal.Rptr. 632].) Here, plaintiff has even less cause to complain since its defense costs were fully covered by both of its

insurers. The complaint alleged Federal provided plaintiff with a defense only under its directors and officers policy, which "did not provide coverage for 'property damage' or 'bodily injury' and hence did not indemnify [plaintiff] against those elements of the Lopez lawsuit[] . . . ." (Underscoring omitted.) Plaintiff also alleged "Federal's . . . policy was 'self-liquidating,' " and Federal had already paid litigation expenses exceeding $600,000. But, as previously noted, plaintiff did not plead or prove it was subject to other third party claims exhausting Federal's policy limits. In addition, plaintiff stipulated at trial that Federal's "*policies* provided some coverage" (italics added) and a "defense for the Lopez lawsuit," plus Federal's policy limits were "$11,000,000, of which over $6,000,000 remained . . . *unexhausted* . . . ." (Italics added.) Finally, plaintiff stipulated that defendant contributed nearly $245,000 towards its defense in the Lopez action. Thus, the record establishes plaintiff was fully protected from both the expense of litigation and the exposure to liability in that lawsuit.

While the Supreme Court recognized an exception to the foregoing rule in *Wint v. Fidelity & Casualty Co.* (1973) 9 Cal.3d 257 [107 Cal.Rptr. 175, 507 P.2d 1383], that case is distinguishable from the present appeal. There the insured had two liability policies, one with a limit of $10,000, and a second carrying a limit of $100,000. Only the first insurer agreed to defend the insured against a third party action, and he entered into an $80,000 consent judgment, assigning his rights against the latter insurer to the plaintiff. The Supreme Court rejected the claim that the first insurer's defense rendered the second insurer's failure to do so "of no consequence . . . ." (*Id.* at p. 263.) "[A] defense by an insurer whose policy has a limit far below the amount claimed cannot be equated to the defense of an insurer who stands to lose 10 times as much as the insurer who defends . . . ." (*Ibid.*) That is not the situation presented in this case.

■■■ Nor can plaintiff establish it suffered any additional damages proximately caused by defendant's alleged misconduct. "Tort damages are 'the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.' [Citations.]" (*Amato v. Mercury Casualty Co., supra,* 53 Cal.App.4th at p. 831; see also Civ. Code, § 3333.) Since a tort action for breach of the covenant of good faith and fair dealing "is one seeking recovery of a *property* right, not personal injury," to prevail the insured must show proof of economic loss. (*Gourley v. State Farm Mut. Auto. Ins. Co.* (1991) 53 Cal.3d 121, 127, 128 [3 Cal.Rptr.2d 666, 822 P.2d 374]; accord *Continental Ins. Co. v. Superior Court* (1995) 37 Cal.App.4th 69, 86 [43 Cal.Rptr.2d 374] ["In the absence of any economic loss there is no invasion of plaintiffs' property rights to which their alleged emotional distress over Continental's denial and delay could be incidentally attached. In short, there would be no legal basis for" tort relief] (italics omitted).)

Plaintiff cites three categories of damages allegedly resulting from defendant's purported breach of the covenant of good faith and fair dealing: (1) "[I]ncreased insurance premiums" incurred "[a]fter Federal funded the majority of defense costs and the entire settlement," (2) "attorneys' fees [incurred] in the Lopez action . . . in connection with a 'defensive' cross-complaint . . . filed on [plaintiff's] behalf," and (3) attorney fees incurred "to prosecute this action against [defendant]." As to the first and second categories, plaintiff's argument lacks merit simply because the complaint does not mention them. Special damages must be pleaded with particularity. (*MacLeod v. Tribune Publishing Co.* (1959) 52 Cal.2d 536, 547–548 [343 P.2d 36]; *Diodes, Inc. v. Franzen* (1968) 260 Cal.App.2d 244, 257 [67 Cal.Rptr. 19].) Thus, even assuming plaintiff might otherwise seek these sums, the trial court properly found plaintiff could not recover them in this litigation.

In any event, plaintiff's special damage claims lack merit. Concerning the alleged increase in insurance premiums, except for workers' compensation insurance where the rating system used to set premiums inextricably links the amount of an insured's premium to the insurer's timely handling of prior claims (see *Security Officers Service, Inc. v. State Compensation Ins. Fund* (1993) 17 Cal.App.4th 887, 897 [21 Cal.Rptr.2d 653]), the cost of future insurance premiums "implicates the marketplace aspect of [an insured's] relationship with [the insurer] . . . ." (*New Plumbing Contractors, Inc. v. Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1096–1097 [9 Cal.Rptr.2d 469]; see also *Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 939 [16 Cal.Rptr.3d 849, 94 P.3d 1055] [generally an insurer's ability to charge a premium "will be disciplined by competition among insurers"].) Several factors determine how much plaintiff will have to pay for future liability insurance coverage. Since Federal admittedly had an independent obligation to contribute to the defense and settlement of the Lopez action, it cannot be concluded that plaintiff's insurance premiums would not have increased in any event. The causal relationship between plaintiff's claim that its insurance premiums have increased and defendant's alleged wrongful failure to defend and indemnify it in the Lopez action is too tenuous to support recovery of this expense as special damages.

As for the fees incurred to file a cross-complaint in the Lopez action, plaintiff fails to refer us to any citable legal authority supporting recovery in tort for litigation expenses incurred to seek affirmative relief against a third party in the underlying lawsuit. Liability insurance policies impose on an insurer the obligations to defend and indemnify an insured, but these policies generally do not impose an obligation to pursue claims for affirmative relief against third parties. (*James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093, 1104 [111 Cal. Rptr. 2d 181]; *Barney v. Aetna Casualty & Surety Co.* (1986) 185 Cal.App.3d 966, 975 [230 Cal.Rptr. 215].) Plaintiff

does not identify any provision in defendant's policy supporting a contrary result. Thus, plaintiff's payment of these expenses did not proximately result from defendant's alleged misconduct concerning the Lopez lawsuit.

Plaintiff's third category of special damages concerns so-called *Brandt* fees. In *Brandt v. Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796], the Supreme Court held: "When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney's fees are an economic loss—damages—proximately caused by the tort. [Citation.] These fees must be distinguished from recovery of attorney's fees *qua* attorney's fees, such as those attributable to the bringing of the bad faith action itself. What we consider here is attorney's fees that are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." (*Id.* at p. 817; see also *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 806 [16 Cal.Rptr.3d 374, 94 P.3d 513].)

Unlike the claims for increased insurance premiums and the litigation expenses for its cross-complaint, the complaint does allege plaintiff "retained insurance coverage counsel in order to attempt to obtain the benefits to which it was entitled under its [p]olicies." But the record establishes plaintiff was not reasonably compelled to retain coverage counsel to protect its rights. The admissions in plaintiff's complaint, plus the parties' stipulation at trial established the following undisputed facts: Federal's policies provided some coverage for the Lopez lawsuit, thus triggering its obligation to defend plaintiff in that action; Federal paid the bulk of defense costs incurred in the Lopez lawsuit plus the settlement; and defendant paid the balance of the funds expended for plaintiff's defense.

 To support a bad faith action, plaintiff needed to establish actual financial loss, not merely a potential that it may suffer a loss sometime in the future. (*Waters v. United Services Auto. Assn.* (1996) 41 Cal.App.4th 1063, 1078 [48 Cal.Rptr.2d 910].) The record shows Federal continuously defended plaintiff in the Lopez action and ultimately paid a settlement on plaintiff's behalf. Because plaintiff received the benefit of a complete defense from both Federal and defendant, it had no claim against defendant for benefits that would support recovery of *Brandt* fees.

As a result, plaintiff cannot show it suffered any cognizable injury in either contract or tort.

*Plaintiff's Motion to Amend the Complaint*

Finally, plaintiff contends the trial court abused its discretion in denying its posttrial motion to formally amend the complaint to allege the assignment received from Federal and to include causes of action for contribution and subrogation. Plaintiff cites the general rule of liberality in allowing amendments to pleadings, and argues its "motion was timely given the unique circumstances of this case" and the amended complaint would not have prejudiced defendant.

■■■ Code of Civil Procedure section 473, subdivision (a)(1) permits a court, "in furtherance of justice," to "allow a party to amend any pleading . . . in any . . . respect." The trial court's ruling on a motion to amend a pleading is reviewed under an abuse of discretion standard (*Bedolla v. Logan & Frazer* (1975) 52 Cal.App.3d 118, 135 [125 Cal.Rptr. 59]), and the appellant has the burden of establishing its discretion was abused. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612 [107 Cal.Rptr.2d 489].) Generally, "the trial court has wide discretion in determining whether to allow the amendment, but the appropriate exercise of that discretion requires the trial court to consider a number of factors: '*including the conduct of the moving party and the belated presentation of the amendment.* [Citation.] . . . The law is well settled that a long deferred presentation of the proposed amendment without a showing of excuse for the delay is itself a significant factor to uphold the trial court's denial of the amendment. [Citation.]' [Citation.] 'The law is also clear that even if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial.' [Citation.]" (*Leader v. Health Industries of America, Inc.,* supra, 89 Cal.App.4th at p. 613; see also *Green v. Rancho Santa Margarita Mortgage Co.* (1994) 28 Cal.App.4th 686, 692 [33 Cal.Rptr.2d 706].)

Contrary to plaintiff's assertion, it failed to timely seek to amend the complaint. Plaintiff and Federal executed their postsettlement agreement well before trial began, but plaintiff took no action to amend its complaint to assert the assignment contained in that agreement. During trial the court suggested plaintiff amend its complaint, but plaintiff rejected the proposal. The trial court announced its intended decision at the end of trial in October 2002, ordering defendant to prepare a judgment. But plaintiff waited three months before filing its motion to amend the complaint. The motion did not provide an excuse for this delay. Under the circumstances, the trial court did not err in denying the posttrial motion to amend the complaint.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Sills, P. J., and Bedsworth, J., concurred.