Filed 10/23/15  Sarnecky v. Fidelity Nat. Title Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAMES SARNECKY et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>FIDELITY NATIONAL TITLE COMPANY et al.,<br><br>    Defendants and Respondents. | D064968<br><br><br>(Super. Ct. No.<br> 37-2010-00092634-CU-OR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Aguirre, Morris & Severson and Michael J. Aguirre, Maria Christina Severson; Mazzarella Lorenzana and Mark C. Mazzarella; Stris & Maher and Peter K. Stris, for Plaintiffs and Appellants.

Hahn Loeser & Parks and Michael J. Gleason, James Edward Heffner, Lindsay J. Mertens, for Defendant and Respondent, Fidelity National Title Company.

Jones Day and Edward Patrick Swan, Jr., Nathaniel P. Garret, Katie Keitges, Sarah Benington, for Defendant and Respondent, First American Title Insurance Company.

Plaintiffs and appellants,[1] purchasers of condominium units at a project known as Seahaus La Jolla (Seahaus), appeal from an order granting the motions of defendants and respondents Fidelity National Title Company (Fidelity) and First American Title Insurance Company (First American) (at times, collectively the escrow companies) for judgment on the pleadings on plaintiffs' seventh amended complaint, in which plaintiffs sought to state a cause of action for breach of fiduciary duty against Fidelity and First American, their alleged escrow holders. Plaintiffs contend: (1) the seventh amended complaint states a cause of action for breach of fiduciary duty stemming from the escrow companies' failure to follow the terms of their escrow instructions; (2) judgment on the pleadings was not proper where Fidelity and First American sought to dispute the meaning of the escrow instructions at issue; (3) the operative complaint was not inconsistent with their discovery responses; and (4) they have shown a reasonable possibility that any pleading defect can be cured by amendment. We affirm the judgment.

---

[1] Plaintiffs are James Sarnecky, Osama A. Alkasabi, Nadia Haddada, Debra Good, Stephen Torneo, Karen Torneo, Michele A. Suppes, Herman Jeffrey Hermanson, Donald Scully, Carmen Scully, Joseph Bitterman, Pam Bitterman, Justin Reynolds, Sassan Chakaman, Kenneth R. Zanio, Jr., Barbara Heisser, Eric Farber, Cheryl Farber, William Athing, Ellen Shorey, Ashley Baker, Lance Greer, Ivan Braiker, Adriann Braiker, Tiffini Cartozian, Jonathan S. Fisher, Robin Gordon, Daniel Gordon, Dale F. Harbaugh, Todd Macaluso, Keri Robinson, Barry Stachon, Jeanne Michelle Starsiak, Mark Thorne, Kristine Thorne, Thaddeus Thorne, Sudhir Govind Deshmukh, Kalpana Sudhir Deshmukh, John Baumgartner, Crisko LLC, and intervenors Sarah Beaulac, James Rusk, Nancy Rusk, David Thomas, Delores Thomas, Gordon Dunfee, Maureen Dunfee, Paul Maggauda, Kelly Maggauda, and Amanda Currie.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs own condominium units in Seahaus, a project with varying formats on a bluff in La Jolla. Seahaus's development partners were Webcor Development, Inc. (Webcor) and CLB Partners Lt. Limited Partnership (CLB). In the course of construction, CLB and Webcor deviated from the approved construction plans in various ways, and rushed construction to complete it within a certain time. In March 2005, a decision was made to seal the buildings despite the existence of extensive water damage to the underlying framing, because the defendants' personal income was dependent on closing the sales escrows on the units in or around April 2005.

Plaintiffs eventually filed a putative class action complaint for fraud against Webcor, CLB and other defendants in part seeking rescission of their purchases and damages on grounds they were induced to purchase their units by defendants, who failed to disclose the construction defects and water damage to the framing. They amended their complaint several times to add additional causes of action and name new defendants including the lenders, and eventually filed a fourth amended complaint naming First American, and later Fidelity as Doe 3, in a cause of action for breach of fiduciary duty.

Following pleading challenges and additional amendments, plaintiffs filed the operative seventh amended complaint. They allege that beginning in April 2004, plaintiffs signed agreements to purchase units at Seahaus and to safeguard their purchases, opened up escrow accounts and contracted for title insurance with First American and Fidelity. Fidelity and First American performed escrow services for some

3

of the plaintiffs' purchases of Seahaus units, serving as escrow agents and officers. Plaintiffs allege the lenders financing the purchases contracted with First American and Fidelity for lender title insurance and to complete the lender escrows on the new loans. They allege that Fidelity and First American publicly claim that they are synonymous with customer service and attention to detail with regard to title and escrow insurance products; that their escrow services are specialized to serve all purchase and refinance transactions with the consideration and care they deserve, and that their customers can count on them to deliver quality service. Plaintiffs allege that Fidelity and First American represented to the public that its title officers supervise the closing process, conduct a title search for evidence the seller had the right to sell the property and collect payment, assure no funds or property changes hands until all instructions have been followed and all conditions achieved, and comply with the lender's instructions.

Plaintiffs allege: "An express condition of the escrow and title services contracts between the lenders making loans to plaintiffs for purchases of the [Seahaus] units . . . required the Title and Escrow Companies to determine and confirm that a Certificate of Occupancy and final inspection for the Seahaus La Jolla project has been duly issued and achieved." They allege the loan escrow contracts between Fidelity, First American and the lenders "was made for the plaintiffs [*sic*] benefit in that plaintiffs would receive a marketable title and thereby full value of the property securing the loan obligations plaintiffs were undertaking to pay." Plaintiffs allege they entered into their sales transactions based on the representation that the Seahaus units had received a certificate

4

of occupancy and final inspection from the City of San Diego building officials, but the closing statements issued by Fidelity and First American failed to state that a certificate of occupancy or final inspection had not been issued or conducted.

Fidelity and First American demurred. Thereafter, plaintiffs indicated they would file an eighth amended complaint, and the trial court scheduled a conference in May 2013 to discuss pleadings issues. Plaintiffs ultimately declined to file an amended pleading. At some point, they offered to stipulate that their breach of fiduciary duty claim was based only on the escrow services performed by Fidelity and First American.

Fidelity filed a motion for judgment on the pleadings, in which First American joined, asserting plaintiffs' claim for breach of fiduciary duty failed as a matter of law because plaintiffs could not show Fidelity or First American failed to comply with an escrow instruction. Relying on *Summit Financial Holdings Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705 (*Summit Financial*), they argued an escrow agent's fiduciary duty to the buyers and sellers of property was limited to following the buyer's and seller's escrow instructions; it did not extend to following *the lenders'* closing instructions, to which the buyers and sellers were not a party. Fidelity and First American additionally argued, based on assertedly judicially noticeable verified discovery responses, that certain plaintiffs who had paid in cash admitted they did not use

5

a lender and had no lender closing instructions on which to base a claim.[2] They argued plaintiffs should not be granted leave to amend because plaintiffs had been made aware of the deficiencies in their pleadings months earlier, including at the pleadings conference, but chose rather to oppose the motion, and another amended pleading would be presented with intentional and unwarranted delay.

Plaintiffs opposed the motion. In part, they argued Fidelity and First American owed a fiduciary duty to strictly comply with the parties' instructions but breached that duty, which affected the buyers' decisionmaking process and the property title, resulting in plaintiffs closing escrow without knowing about the absence of a certificate of occupancy. According to plaintiffs, Fidelity and First American sought to interpret provisions in their purchase contract and escrow instructions, and such interpretation was not proper at the pleading stage as the matter presented a dispute or unresolved ambiguity. Plaintiffs maintained the cash purchasers' discovery responses were not inconsistent with the complaint. They sought leave to amend in part on grounds Fidelity

---

2    Fidelity did not file a separate request for judicial notice, but referred to these documents in its notice of motion, and argued there that they were court records subject to judicial notice as contradicting the allegations of plaintiffs' complaint.

6

and First American could not demonstrate prejudice.[3]

At oral argument on the matter, plaintiffs' counsel stated that plaintiffs' theory against Fidelity and First American was based on their purchase and sale agreements, which referenced a purchase contract, escrow instructions, and receipt for deposit provisions stating when escrow was to close. Counsel sought to present a copy of the purchase and sale agreement via an offer of proof and request for judicial notice. She argued that while plaintiffs' breach of fiduciary duty cause of action was based on the escrow companies' failure to follow the lenders' instructions, the lender instructions "are also the buyers' instructions because the buyers were in privity with Fidelity and Fidelity had a separate duty to them." Fidelity's counsel pointed out that the purchase and sale agreement was not included in the complaint or alleged as the basis for the claimed fiduciary duty, but rather the complaint was based on the contract between the lenders and escrow companies. He explained that the lender contract was the focus of Fidelity's discovery and plaintiffs' discovery responses, that the parties had already taken 30 depositions, and any amendment to change the theory to focus on the purchase and sale agreement would require new discovery and retaking of depositions to ask the plaintiffs about that document.

---

3      Plaintiffs also argued Fidelity had earlier moved for judgment on the pleadings on the same grounds, after which the court granted leave to amend, requiring that the present motion be denied because the escrow companies did not cite any intervening material change in the applicable law. They filed a request for judicial notice of various documents, including Fidelity's prior motion and the court's ruling on it, a supplemental discovery response of one plaintiff, and a copy of plaintiffs' stipulation limiting their claims against Fidelity and First American to escrow services. The trial court rejected plaintiffs' argument about Fidelity's earlier motion and they do not repeat it on appeal.

The trial court granted the motion. It ruled plaintiffs' breach of fiduciary duty cause of action failed because Fidelity and First American owed no duty to plaintiffs by failing to follow the lenders' instructions. It denied leave to amend on grounds it would prejudice defendants given the passage of time and discovery expenses already incurred on the pleaded theory of liability. In ruling on the motion, the court denied plaintiffs' request to take judicial notice of an individual plaintiff's verified supplemental discovery response, but otherwise granted plaintiffs' request. It did not address Fidelity and First American's judicial notice arguments concerning plaintiffs' verified discovery responses.

Plaintiffs appeal from the ensuing judgment.

## DISCUSSION

### A. *Standard of Review*

" 'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. [Citation.] A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' [Citation.] 'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law . . . .' [Citation.] Courts may consider judicially noticeable matters in the motion as well." (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.) Thus, " ' "[a] complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." ' " (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) This court gives the complaint a reasonable interpretation, reading it as a whole and its parts in context. (*Ibid.*)

8

B.  *Legal Principles Relating to an Escrow Holder's Fiduciary Duties*

" 'The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. [Citation.]  Whether a fiduciary duty exists is generally a question of law.  [Citation.] Whether the defendant breached that duty towards the plaintiff is a question of fact.' " (*Marzec v. California Public Employees Retirement System* (2015) 236 Cal.App.4th 889, 915, italics omitted.)

With respect to an escrow holder's fiduciary duties, the relevant principles are stated by the California Supreme Court in *Summit Financial*, *supra*, 27 Cal.4th 705.  An escrow involves the deposit of documents and/or money with a third party to be delivered on the occurrence of some condition, and the escrow holder is an agent and fiduciary of the parties to the escrow.  (*Id*. at p. 711.)  The agency created by the escrow is limited to the escrow holder's obligation to carry out the instructions of each of the principal parties to the escrow.  (*Ibid*.; see *Rideau v. Stewart Title of California, Inc.* (2015) 235 Cal.App.4th 1286, 1294.)  An escrow holder must strictly comply with the escrow instructions of the parties to the escrow.  But it " 'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.' "  (*Summit Financial*, 27 Cal.4th at p. 711.)  This limited obligation applies "[a]bsent clear evidence of fraud . . . ."  (*Ibid*.)

In *Summit Financial*, the California Supreme Court addressed whether an escrow holder owes a duty of care to a nonparty to an escrow in circumstances involving an assignment to that nonparty by a third party.  (*Summit Financial*, *supra*, 27 Cal.4th at

9

pp. 707-708.) There, a lender, Summit, claimed that an escrow holder, Continental Lawyers Title Company (Continental), breached a fiduciary duty owed to it in a real property refinance transaction by failing to issue Summit a check. (*Id*. at p. 708.) Continental had followed the parties' escrow instructions to issue a check to the original lender, Talbert. (*Ibid*.) Neither Talbert nor Summit were parties to the escrow. (*Ibid*.) Summit claimed that Continental knew that Talbert had assigned its rights in the note and trust deed to Summit, and thus breached a fiduciary and tort duty of care to it given that knowledge. (*Id*. at pp. 708, 711) The California Supreme Court held there could be no such duties on those facts. In part, it found there was no evidence Continental was aware of any collusion or fraud in the fund disbursement that would have adversely affected any party to the escrow. (*Id*. at p. 711.) It rejected the notion that transactions by strangers to an escrow could supersede and amend instructions given by parties to an escrow, disapproving a case which had relied on authority involving assignments made by *parties to the escrow* who were entitled to give new instructions to the escrow holder. (*Id*. at pp. 712-714 [disapproving *Kirby v. Palos Verdes Escrow Co.* (1986) 183 Cal.App.3d 57, and holding it misread *Builder's Control Service of No. Cal., Inc. v. North American Title Guar. Co.* (1962) 205 Cal.App.2d 68].) In part, *Summit Financial* recognized " 'the general rule that an escrow holder incurs no liability for failing to do something not required by the terms of the escrow or for a loss caused by following the escrow instructions.' " (*Id*. at p. 715.)

10

C. *The Seventh Amended Complaint Fails to State a Cause of Action for Breach of Fiduciary Duty*

Recounting the allegations of their complaint and pointing out they are to be construed liberally, plaintiffs contend they sufficiently alleged Fidelity and First American breached fiduciary duties by failing to ensure that a certificate of occupancy and final inspection report had been issued and made by City of San Diego building officials. They maintain the discovery responses, which the trial court assertedly judicially noticed, described the escrow instructions forming the basis for their cause of action, and they suggest those documents constituted or included their purchase and sale agreement, escrow instructions and receipt for deposit "to which plaintiffs had privity."[4] In particular, plaintiffs say they pointed to section 3.3.1 of the purchase contract as instructing the escrow holder to close once the appropriate city or county department has issued the certificate of occupancy. They assert that when that instruction is deemed true, the complaint states a cause of action for failing to strictly comply with escrow instructions.

Fidelity and First American respond that the seventh amended complaint's allegations make clear that plaintiffs' breach of fiduciary duty claims arise from obligations set out in the *lenders'* closing instructions, to which plaintiffs are not parties,

---

4    Elsewhere, plaintiffs argue that the fact "[t]hat the complaint discusses the bank loans were not to close without the certificate of occupancy goes to the fact the lenders' instructions *included* the Purchase and Sale Agreement, Escrow Instructions and Receipt for Deposit." They assert, "The fact that the lenders also used the instruction does not render the complaint insufficient."

11

and that under *Summit Financial*, they had no duty to comply with those instructions. They ask us to reject plaintiffs' argument that the complaint actually refers to their purchase contract as an attempt to rewrite the complaint, which runs afoul of the principle that general allegations in a pleading are modified and controlled by specific allegations. And they argue plaintiffs cannot rely on their discovery responses to challenge the judgment on the pleadings because the trial court did not grant judicial notice of those responses.

We agree with Fidelity and First American. Plaintiffs' claimed fiduciary duty in the operative complaint is plainly based on the lenders' contracts with the escrow companies to which plaintiffs were not parties, hence plaintiffs' allegations that those contracts contained an express condition that Fidelity and First American assure the existence of a certificate of occupancy and performance of a final inspection, and that the contracts were made for the plaintiffs' benefit. There is no manner in which the seventh amended complaint can be reasonably and liberally construed to reflect some duty on Fidelity or First American to comply with instructions contained in the parties' purchase and sale agreement; the specific allegation that Fidelity and First American's duty arose from the lenders' agreements controls over the general allegations that plaintiffs entered into purchase and sale agreements. (*Melican v. Regents of the University of California* (2007) 151 Cal.App.4th 168, 174-175.)

Nor are there any judicially noticeable documents that would compel such a conclusion in plaintiffs' favor. Contrary to plaintiffs' claim on appeal, and as Fidelity and First American point out, the trial court declined to take judicial notice of plaintiffs'

12

discovery responses in the face of both parties' requests.  The court did not accept plaintiffs' counsel's offer of proof at oral argument to judicially notice a copy of the purchase and sale agreement.[5]  Those documents were not attached as exhibits to the operative complaint, and as a result they play no part in the pleading analysis.  (See *Nolte v. Cedars Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1406 [" 'Facts appearing in exhibits attached to the . . . complaint also are accepted as true and are given precedence, to the extent they contradict the allegations' "].)  Thus, the fact plaintiffs may have collaterally referred to the purchase and sale agreement in discovery is of no moment on our review of the court's judgment on the pleadings.

---

[5]     The document is not properly subject to judicial notice in any event.  Plaintiffs' request for judicial notice, filed on the day of oral argument, was made on grounds the terms of the purchase and sale agreement were "not subject to dispute and are capable of immediate and accurate determination" and not ambiguous.  The cases plaintiffs cited in that request do not support granting judicial notice of such extrinsic evidence.  In *StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, the parties referred to the documents and did not oppose the request for judicial notice, and the court granted judicial notice only of the *existence* of a securities registration statement, a press release, a copy of a stock purchase plan, an article, and a proxy statement filed with the Securities and Exchange Commission, but not the truth of the statements therein or their proper interpretation.  (*Id*. at p. 456, fn. 9.)  *Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397 at page 1403 sets out only general principles, and involves a statute of limitations issue.  In *Ascherman v. General Reinsurance Corp*. (1986) 183 Cal.App.3d 307, the appellate court concluded based on the terms of a reinsurance contract that the plaintiff was not an intended beneficiary of that contract, and the reinsurer had obtained a release from the Department of Insurance, and thus the complaint at issue did not state claims for declaratory relief or unjust enrichment.  (*Id*. at pp. 310-312.)  The parties did not dispute the enforceability or interpretation of the reinsurance contract or release, and the appellate court apparently took judicial notice of those documents.  (*Id*. at pp. 310-311.)  To the extent *Ascherman* suggests that judicial notice of extrinsic documents is proper without some analysis of their purpose in the pleading or meaning (see discussion in *Fremont Indem. Co. v. Fremont General Corp*. (2007) 148 Cal.App.4th 97, 111-119), we decline to follow it.

Though plaintiffs contend Fidelity and First American sought to advance some "interpretation" of the provisions in their purchase and sale agreements, they do not cite to any place in the record reflecting such an interpretation and, in fact, Fidelity and First American's position at all times was that the operative complaint plainly sought to allege a breach of fiduciary duty stemming from obligations in the lenders' contracts. The operative pleading is in accord, and consequently under the principles of *Summit Financial*, it does not state a cause of action against Fidelity and First American.

D. *Plaintiffs' Request for Leave to Amend*

In opposing Fidelity and First American's motion, plaintiffs sought leave to amend on grounds there was a reasonable possibility a pleading defect could be cured by amendment. They pointed to their discovery responses identifying the purchase and sale agreements, escrow instructions, and receipt for deposit, and argued "Fidelity's claims that it would be prejudiced by an amendment clarifying any ambiguities . . . is without merit as it has had all the information it needs to defend the case" and the "discovery responses from plaintiffs described those escrow instructions that formed the basis of the sale by naming the document and the exact provision therein." Plaintiffs repeat these arguments on appeal, contending there is no new legal theory compelling a finding that defendants would suffer prejudice, and thus the trial court abused its discretion by not granting leave to amend.

It is true that courts must "apply a policy of great liberality in permitting amendments to the complaint at any stage of the proceedings, up to and including

14

trial . . . ."  (*Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 487; see *Meyer v. State Board of Equalization* (1954) 42 Cal.2d 376, 386-387.)  This court reviews a ruling on a request for leave to amend for an abuse of discretion, and the party challenging the ruling has the burden of making a "clear showing of abuse."  (*M & F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.* (2012) 202 Cal.App.4th 1509, 1534; see also *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1097.)  " ' " '[E]ven if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial.' " '  [Citations.]  Thus, appellate courts are less likely to find an abuse of discretion [in denying leave] where, for example, the proposed amendment is " 'offered after long unexplained delay . . . or where there is a lack of diligence . . . ." ' "  (*Melican v. Regents of University of California*, *supra*, 151 Cal.App.4th at p. 175; see *P & D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345.)

In addition, the plaintiff must show that the complaint can be amended to cure the defects.  (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700.)  Where a complaint's allegations are insufficient as a matter of law, the burden of proving a reasonable possibility that an amendment can cure the defect "is squarely on the plaintiff."  (*Blank v. Kirwin* (1985) 39 Cal.3d 311, 318.)  " ' "[T]he assertion of an abstract right does not satisfy this burden" ' "  (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 354); rather, plaintiffs must "enumerate the facts and demonstrate how they establish a cause of action."  (*Kumaraperu v. Feldsted* (2015) 237 Cal.App.4th 60, 65 see also *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th

15

1481, 1491 [to satisfy the burden of proving there is a reasonable possibility of amendment on appeal, a plaintiff " 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading' "; the proposed allegations " 'must be factual and specific, not vague or conclusionary' "].) " 'On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory.' " (*Kumaraperu v. Feldstead,* at p. 66; *C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1102.)

Here, the record reflects that in September 2012, Fidelity's counsel notified plaintiffs' counsel that there was "no contract requiring Fidelity to 'determine and confirm that a Certificate of Occupancy and final inspection for the Seahaus La Jolla project [was] duly issued and achieved.' " Plaintiffs thereafter filed the seventh amended complaint, and after the May 2013 pleading conference elected not to amend that pleading. Though plaintiffs identified their purchase and sale agreements in discovery responses as the documents providing the basis for their claim, they did not seek leave to amend until after Fidelity and First American moved for judgment on the pleadings. By the time that motion was heard, the depositions of at least 20 plaintiffs, and 14 defense witnesses, had taken place.

Plaintiffs offered no reason for this delay, which in addition to causing prejudice to defendants, was the basis for the trial court's ruling. (Accord, *P & D Consultants, Inc. v. City of Carlsbad*, *supra*, 190 Cal.App.4th at p. 1345.) Nor do they explain the delay on

16

appeal.  They merely argue, as they did below, that Fidelity and First American would not be prejudiced because they were aware of plaintiffs' discovery responses.  Nor did plaintiffs show in their opposition how they could amend the complaint or how it would change the legal effect of their pleading, other than pointing to their discovery responses. They have not made such a showing on appeal.  (*Smith v. State Farm Mutual Automobile Ins. Co.*, *supra*, 93 Cal.App.4th at p. 711 [though such a showing may be made for the first time on appeal, it nevertheless "must be made"].)  For these reasons, we conclude plaintiffs have not demonstrated the trial court clearly abused its discretion in denying leave to amend.

DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McINTYRE, Acting P. J.

IRION, J.