[No. G032085. Fourth Dist., Div. Three. May 13, 2004.]

BRAMALEA CALIFORNIA, INC., Cross-complainant and Appellant v. RELIABLE INTERIORS, INC. et al., Cross-defendants and Respondents.

COUNSEL

Cooksey, Toolen, Gage, Duffy & Woog, Philip M. Woog, Paul K. Hoffman and Brian R. VanMorter for Cross-complainant and Appellant.

Murtaugh Miller Meyer & Nelson, Murtaugh Meyer Nelson & Tregiia, Thomas J. Skane and Matthew W. Johnson for Cross-defendant and Respondent Reliable Interiors, Inc.

Klinedinst PC, Donald R. McKillop, Sr., and David N. Bregman for Cross-defendant and Respondent Guaranteed Products Corporation.

Law Offices of Linda M. Libertucci and Mark G. Harris for Cross-defendants and Respondents Ram-Mar Painting, Inc., and Sahara Waterproofing.

Demler, Armstrong & Rowland, James N. Murphy and Brian C. Dunn for Cross-defendant and Respondent All Star Electric, Inc.

OPINION

**SILLS, P. J.**—Bramalea California, Inc. (Bramalea), a residential real estate developer, was sued by homeowners for construction defects. Bramalea cross-complained for breach of contract and indemnity against the involved subcontractors. Both the complaint and the cross-complaint were settled, except the issue of Bramalea's right to recover attorney fees incurred after it tendered its defense to the subcontractors but before it tendered its defense to the subcontractors' insurers. The trial court dismissed the cross-complaint, finding because Bramalea had not actually paid the attorney fees, it had no standing to recover them. We affirm.

## FACTS

The homeowners sued Bramalea in March 1998; at that time, Bramalea was in chapter 11 bankruptcy. Accordingly, the homeowners stipulated in the bankruptcy court to limit their recovery "to any applicable insurance proceeds as well as any assignment of rights by the Debtor against its subcontractors . . . ." Bramalea's insurer, Zurich of Canada, hired counsel to provide a defense and file a cross-complaint against Bramalea's subcontractors, all of whom had signed subcontractors' agreements. The cross-complaint sought relief based on equitable indemnity and breach of the subcontractors' agreements. The agreements required the subcontractors to "indemnify and save Contractor . . . harmless from any and all . . . damages, . . . including, without limitation, attorneys' fees and court costs, which might arise from any act or

omission of Subcontractor . . . ." The subcontractors also agreed to maintain liability insurance protecting Bramalea "from all liability relating to all work hereunder," and to pay Bramalea's attorney fees "arising out of this contract, or out of work performed by the Subcontractor on the Project . . . ."

For unexplained reasons, Bramalea delayed making a direct tender of defense directly to the subcontractors' insurance carriers. In March 2000, it tendered its defense to the carriers for Ram-Mar Painting and All Star Electric, Inc., and in September 2000 to the carriers for Guaranteed Products, Sahara Waterproofing, and Reliable Interiors, Inc. Upon tender, the subcontractors' carriers promptly assumed the cost of defense. In August 2000, the homeowners, Bramalea, and the subcontractors entered into a settlement agreement, resolving all claims between and among the parties except "those claims asserted by [Bramalea] and its insurance carrier against [the subcontractors] and the insurance carriers for all [the subcontractors] relating to the reimbursement of defense fees and costs incurred on behalf of [Bramalea] during the course of the litigation . . . ."

Ram-Mar Painting filed a motion for judgment on the pleadings and Reliable Interiors filed a motion to dismiss the cross-complaint; they were heard together in February 2003. Ram-Mar claimed Bramalea had no standing to recover attorney fees because it lost all contract rights against the subcontractors when it filed for bankruptcy protection in 1995. Reliable Interiors claimed Bramalea was not the real party in interest because its insurer, not Bramalea, had paid the attorney fees. The trial court denied Ram-Mar's motion because it "failed to meet its burden of proof." It granted the motion by Reliable Interiors, finding: "In order for Bramalea to proceed on these theories [of indemnity and breach of contract], it must be shown that Bramalea has paid sums of money to which it is entitled to indemnity or that it has been damaged under its breach of contract theory by the payment of such sums. . . . It is not disputed that Bramalea has paid nothing. . . . Bramalea has no standing. The collateral source rule does not apply here as there is no tort action involved. This is not an action by Zurich for subrogation. It is an action for indemnity and breach of contract."

## DISCUSSION

### Attorney Fees as Costs

Bramalea argues the trial court was wrong to dismiss the cross-complaint simply because it had not paid the attorney fees out of its own pocket. Citing Code of Civil Procedure sections 1032 and 1033.5,[1] it claims it is entitled to

---

[1] All statutory references are to the Code of Civil Procedure.

recover attorney fees from the subcontractors as a cost of litigation because they were incurred when it was subjected to the litigation by the homeowners.

■ Section 1032 provides that the prevailing party is entitled to recover litigation costs as a matter of right; section 1033.5 includes attorney fees, when authorized by contract, statute, or law, as an allowable item of costs. (§ 1032, subd. (b); § 1033.5, subd. (a)(10).) Section 1033.5, subdivision (c)(1) provides that "[c]osts are allowable if incurred, whether or not paid." Bramalea points out that attorney fees have been allowed as costs to a party who has incurred, but not actually paid, the fees. (*Lolley v. Campbell* (2002) 28 Cal.4th 367 [121 Cal.Rptr.2d 571, 48 P.3d 1128]; *Rapp v. Spring Valley Gold Company* (1888) 74 Cal. 532 [16 P. 325].)

Bramalea misses the point. It is not seeking to recover its attorney fees as a prevailing party in litigation. Although no liability was admitted, Bramalea and the subcontractors paid the homeowners $1,185,463.37 in exchange for mutual releases of liability, with the exception of Bramalea's claim for indemnity against the subcontractors. Bramalea does not emerge from the homeowner's litigation as the prevailing party. Rather, Bramalea's action against the subcontractors is for breach of contract and indemnity.

### Attorney Fees as Breach of Contract Damages

■ Bramalea admits its attorney fees were entirely paid for by Zurich and it has suffered no out-of-pocket loss. Thus, any recovery it might receive from the subcontractors would be a prohibited double recovery unless allowed by the collateral source rule. The collateral source rule allows an injured person to recover from the wrongdoer for damages suffered even if he has been compensated for the injury "from a source wholly independent of the wrongdoer," such as insurance. (*Anheuser-Busch, Inc. v. Starley* (1946) 28 Cal.2d 347, 349 [170 P.2d 448].) But the collateral source rule applies to tort damages, not to damages for breach of contract. (*Plut v. Fireman's Fund Ins. Co.* (2000) 85 Cal.App.4th 98, 107 [102 Cal.Rptr.2d 36].) This is due to the fundamental differences between tort and contract damages. (*Id.* at p. 108.) "The collateral source rule is punitive; contractual damages are compensatory. The collateral source rule, if applied to an action based on breach of contract, would violate the contractual damage rule that no one shall profit more from the breach of an obligation than from its full performance." (*Patent Scaffolding Co. v. William Simpson Constr.* (1967) 256 Cal.App.2d 506, 511 [64 Cal.Rptr. 187].) In contrast, " 'the tortfeasor's responsibility [is]

to compensate for all harm that he causes, not confined to the net loss that the injured party receives.' " (*Plut v. Fireman's Fund Ins. Co.*, *supra*, 85 Cal.App.4th at p. 108.)

Bramalea argues its causes of action against the subcontractors should be characterized as sounding in tort, giving rise to the application of the collateral source rule. It asserts, "Having prudently insured against the risk of incurring attorney's fees relating to homeowner tort actions, Bramalea should not now be precluded from recovering the defense costs it incurred as a result of its subcontractors' negligence." But the subcontractors have not been adjudicated as negligent; the action was settled. Bramalea's causes of action against the subcontractors are based entirely in contract.

A breach of contract is not actionable without damage. (*Patent Scaffolding Co. v. William Simpson Constr.*, *supra*, 256 Cal.App.2d at p. 511.) In *Patent Scaffolding*, the contract between the contractor and the subcontractor provided that the contractor would procure insurance to protect the subcontractor's materials from fire loss. Before entering into that contract, however, the subcontractor had procured three separate insurance policies covering his materials and equipment. Subsequently, a fire damaged the subcontractor's equipment. The contractor had not procured insurance as promised. The subcontractor collected in full from its insurers, and the insurers brought an action for subrogation in the name of the subcontractor against the contractor.

The Court of Appeal stated, "If [the subcontractor] had had no insurance to compensate it for its loss, [it] could have recovered damages from [the contractor] for all detriment proximately caused by [the contractor's] breach of its contractual duty to indemnify or to procure insurance." (*Patent Scaffolding Co. v. William Simpson Constr.*, *supra*, 256 Cal.App.2d at. p. 510.) But because the subcontractor had been fully compensated for its loss, he could not sue the contractor for his own benefit. (*Ibid.*)[2]

### Attorney Fees on Behalf of Zurich

Bramalea argues even if it is deemed to have transferred its claim for attorney fees to Zurich, it can pursue the action in its own name. This would be true if Bramalea had assigned the claim to Zurich or if Zurich was seeking to take Bramalea's place to pursue recovery against the subcontractors on an

---

[2] The court also remarked that the subcontractor could not recover for the cost of the premiums paid to its insurers because it did not incur them as a consequence of its contract with the contractor or as a result of the contractor's breach of contract. (*Patent Scaffolding Co. v. William Simpson Constr.*, *supra*, 256 Cal.App.2d at p. 511.)

equitable subrogation theory. (*Greco v. Oregon Mut. Fire Ins. Co.* (1961) 191 Cal.App.2d 674, 687 [12 Cal.Rptr. 802].) Bramalea does not contend that either of the former circumstances exists.

Furthermore, it is questionable whether Zurich *could* pursue equitable subrogation against the subcontractors.[3] In *Patent Scaffolding*, the court stated that even if the subcontractor suffered no loss, the loss of the subcontractor's insurers could be substituted "if the insurers' loss was proximately caused by the act or omission of [the contractor] or one for whose acts or omissions [he] was vicariously liable. The most common subrogation action is one brought on behalf of an insurer against a wrongdoer whose wrong caused the loss. [Citations.] Liability of the wrongdoer may, of course, be based not only on a tort, but also upon a breach of contract [citations] so long as there exists the necessary causal relationship between the wrong and the damage. [Citation.]" (*Patent Scaffolding Co. v. William Simpson Constr.*, supra, 256 Cal.App.2d at pp. 511–512.)

The court in *Patent Scaffolding* did not find the necessary causal relationship. "Where two parties are contractually bound by independent contracts to indemnify the same person for the same loss, the payment by one of them to his indemnitee does not create in him equities superior to the nonpaying indemnitor, justifying subrogation, if the latter did not cause or participate in causing the loss." (*Patent Scaffolding Co. v. William Simpson Constr.*, supra, 256 Cal.App.2d at p. 514.) It pointed out, "The insurers' loss was not caused by [the contractor's] failure to get insurance or to indemnify [the subcontractor]. The insurers' loss was caused by the fire, the very risk which each assumed, and [the contractor's] failure to perform its contractual duty had nothing to do with the fire." (*Id.* at p. 512.) The court continued, "If subrogation were permitted, the insurers who have accepted premiums to

---

[3] "The elements of an insurer's cause of action based upon equitable subrogation are these: (1) The insured has suffered a loss for which the party to be charged is liable, either because the latter is a wrongdoer whose act or omission caused the loss or because he is legally responsible to the insured for the loss caused by the wrongdoer; (2) the insurer, in whole or in part, has compensated the insured for the same loss for which the party to be charged is liable; (3) the insured has an existing, assignable cause of action against the party to be charged, which action the insured could have asserted for his own benefit had he not been compensated for his loss by the insurer; (4) the insurer has suffered damages caused by the act or omission upon which the liability of the party to be charged depends; (5) justice requires that the loss should be entirely shifted from the insurer to the party to be charged, whose equitable position is inferior to that of the insurer; and (6) the insurer's damages are in a stated sum, usually the amount it has paid to its insured, assuming the payment was not voluntary and was reasonable. [Citations.]" (*Patent Scaffolding Co. v. William Simpson Constr.*, supra, 256 Cal.App.2d at p. 509.)

cover the very loss which occurred receive a windfall. There is no evidence in this record that the insurers' acceptance of the risk or their determination of the cost to the insured of the insurance policies was based in any way upon the terms of [the contractor's] contract with [the subcontractor]. The contest is not between two insurance companies, each of which has received premiums for bearing the loss which ultimately occurred, but between insurers and a general contractor who received no independent consideration for the assumption of the risk." (*Id.* at p. 516.)[4]

■ Under the reasoning of the *Patent Scaffolding* court, Zurich would not be entitled to equitable subrogation. The attorney fees were not caused by the subcontractors' breach of their obligation to indemnify Bramalea; they were caused by the lawsuit brought by the homeowners for construction defects, which was one of the risks Zurich accepted premiums to cover. Whether the subcontractors caused the construction defects was not resolved by this litigation. (See also *Mid-Century Ins. Co. v. Hutsel* (1970) 10 Cal.App.3d 1065, 1069–1070 [89 Cal.Rptr. 421].)[5]

---

[4] *Patent Scaffolding* has been followed by several cases, including *California Food Service Corp. v. Great American Ins. Co.* (1982) 130 Cal.App.3d 892, 899–900 [182 Cal.Rptr. 67]. Other cases have held that the terms and circumstances of the indemnity agreement may compel the conclusion that the indemnitor, in equity, should bear the entire loss even though the indemnitor did not cause the loss. (*Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc.* (1997) 52 Cal.App.4th 553, 557–559 [60 Cal.Rptr.2d 591]; *Meyer Koulish Co. v. Cannon* (1963) 213 Cal.App.2d 419, 428–429 [28 Cal.Rptr. 757] [disapproved by *Patent Scaffolding Co. v. William Simpson Const., supra,* 256 Cal.App.2d at p. 515].)

[5] Presumably, Zurich could pursue an action against the subcontractors on its own for equitable contribution as a coinsurer or coindemnitor. "Where multiple insurers or indemnitors share equal contractual liability for the primary indemnification of a loss or the discharge of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor." (*Fireman's Fund Ins. Co. v. Maryland Cas. Co.* (1998) 65 Cal.App.4th 1279, 1295 [77 Cal.Rptr.2d 296].)

■ The subcontractors contend the loss of attorney fees should be blamed on either Bramalea or Zurich because neither tendered the defense to the subcontractors' insurers in a timely manner. But this action (and the hypothetical action by Zurich for equitable contribution) is against the subcontractors, not their insurers. The promise to indemnify is separate from the promise to obtain insurance. (*Chevron U.S.A., Inc. v. Bragg Crane & Rigging Co.* (1986) 180 Cal.App.3d 639, 644 [225 Cal.Rptr. 742].)

## DISPOSITION

The judgment of dismissal is affirmed. Respondents are entitled to costs on appeal.

Rylaarsdam, J., and Bedsworth, J., concurred.

A petition for a rehearing was denied June 3, 2004, and appellant's petition for review by the Supreme Court was denied August 25, 2004.