Filed 11/14/14  Gary and Gunland-Gary v. Cal. Dept. of Transportation CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GUY GARY and REIGNEE GUNLAND-GARY, Plaintiffs, v. CALIFORNIA DEPT. OF TRANSPORTATION et al., Defendants. _____ FORD CONSTRUCTION CO., INC. et al., Cross-Complainants and Respondents, v. MADCO ELECTRIC, INC., Cross-Defendant and Appellant. | F067523 (Fresno Super. Ct. No. 09CECG03491) **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Kristi Culver Kapetan, Judge.

Epps & Gilroy and Darren Epps for Cross-Defendant and Appellant.

Emerson Sorensen Church; Emerson, Corey, Sorensen, Church & Libke; and Ryan D. Libke for Cross-Complainants and Respondents.

-ooOoo-

## INTRODUCTION

Madco Electric, Inc. ("Madco") worked on a construction project for Ford Construction Company, Inc. ("Ford"). Madco agreed to defend and indemnify Ford for claims arising from Madco's operations.

Years later, Ford settled a third-party suit alleging that Madco's work had, in part, caused a wrongful death. The settlement amount and Ford's attorney fees were paid by Ford's insurer, Old Republic General Insurance Corporation ("Old Republic").

Ford cross-complained against Madco, alleging Madco breached its obligation to defend and indemnify Ford. Madco contended that Ford's damages should be limited to its out-of-pocket loss (i.e., a $25,000 deductible Ford paid under its insurance policy with Old Republic). Madco argues that Ford should not be permitted to recover for other amounts, which it did not pay (i.e., the settlement amount and the defense costs above the $25,000 deductible paid by Old Republic). As a result, Madco contends the trial court erred when it awarded Ford $109,788.23 in damages. We agree and modify the judgment to award Ford $25,000. [1] We affirm the judgment as modified.

## FACTS

### Contract Between Ford and the State of California

In 2000, the State of California (the "State") contracted with Ford to improve a portion of State Route 41 (SR-41) in Fresno County. The contract contained an indemnity provision in favor of the State.

---

[1] Madco's opening brief argues Ford's damages are limited to $25,000, and notes that if this court agrees "that Ford can recover no more than $25,000, then it is unnecessary … to consider Madco's" remaining arguments. Because we do agree that the judgment must be reduced to $25,000, we do not address Madco's other contentions.

2.

**Subcontract Between Ford and Madco**

Ford subcontracted work related to lighting and a traffic monitoring station to Madco. The subcontract contained an indemnity provision in favor of Ford, which read in part:

> "… Subcontractor shall indemnify and save harmless Owner and Contractor … of and from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liabilities, in law or in equity, of every kind and nature whatsoever ('Claims') arising out of or in connection with Subcontractor's operations to be performed under this Agreement for, but not limited to:
>
> > "(a) Personal injury, including, but not limited to, bodily injury, emotional injury…caused or alleged to be caused in whole or in part by any act or omission of Subcontractor …."

The indemnity provision also provided that Madco "shall not be obligated under this Agreement to indemnify Owner or Contractor for Claims arising from the sole negligence or willful misconduct of Owner or Contractor …."

The subcontract also provided:

> "Subcontractor shall:
>
> "(a) At Subcontractor's own cost, expense and risk, defend all Claims…that may be brought or instituted by third persons…against Contractor or Owner ….
>
> "(b) Pay and satisfy any judgment or decree that may be rendered against Contractor or Owner … or any of them, arising out of such Claim; and/or
>
> "(c) Reimburse Contractor or Owner…for any and all legal expense incurred by any of them in connection herewith or in enforcing the indemnity granted in this Section …."

**The Underlying Incident and Lawsuit**

On February 1, 2009, a vehicle collision occurred on SR-41 at its intersection with Floral Avenue. A minivan was traveling eastbound on Floral Avenue. The minivan proceeded into SR-41's northbound lanes without yielding to northbound traffic. There,

it collided with a Ford Explorer that had been traveling northbound on SR-41. The Explorer eventually rolled into a light pole that had been installed by Madco. The top of the Explorer was crushed, killing a nine-year-old passenger.

The deceased child's parents ("plaintiffs") sued the State and several other defendants in 2009. In 2010, Ford and Madco were added to the suit.

**Ford's Insurance Policy**

At the time of the accident, Ford was covered by a general liability policy issued by Old Republic. The Old Republic policy had a $25,000 deductible, which Ford paid.

The policy contained the following provision:

> "If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them."

**Ford's Tenders to Madco**

Ford tendered its defense to Madco on July 21, 2010, and again on August 27, 2010. In a letter dated September 27, 2010, Madco's counsel acknowledged Ford's tender of defense. Madco's counsel indicated he was still reviewing the subcontract. The letter also said, "While Madco may owe your client a defense in this matter, it appears that Ford is also defending issues unrelated to Madco's work, i.e., the appropriateness of road signs, which would limit the scope of Madco's duties to your client." The trial court found that Madco's response constituted a declination of the tender "at that time" (i.e., September 27, 2010).

**State's Motion for Summary Judgment and Tender of Defense**

The State moved for summary judgment. The motion was denied on the basis that plaintiffs raised a triable issue of fact regarding whether the light pole was installed according to the specifications and plans. On January 3, 2011, the State then tendered its defense to Ford. The State noted that, in light of the trial court's ruling on summary

4.

judgment, " 'it appears that the only basis upon which the State remains in this case is on the theory that the contractor did not construct the project according to the design specifications….' "

Ford forwarded the State's tender to Madco, which Madco denied. Ford filed a cross-complaint against Madco on April 14, 2011. The cross-complaint was eventually amended to allege only a single cause of action against Madco for express indemnity. Ford's cross-complaint sought reimbursement from Madco for the $100,000 settlement between Ford, the State and plaintiffs. Ford also sought reimbursement of its defense costs in the amount of $59,049.33.

**Settlements**

The settlement referenced in Ford's cross-complaint occurred in October 2011. Ford and the State settled with plaintiffs for $100,000. The settlement agreement did not include any apportionment of the $100,000 between Ford and the State. Ford's insurer, Old Republic, funded the $100,000 settlement.

In November 2011, Madco settled with plaintiffs for $200,000.

**Trial**

In 2013, a bench trial was held on Ford's cross-complaint against Madco.

In lieu of a full trial, the parties submitted joint exhibits, stipulated facts and trial briefs. Among the evidence admitted at trial was Ford's subcontract with Madco and Ford's insurance policy with Old Republic.

In a statement of decision, the trial court found in favor of Ford. It determined that Madco was required to reimburse $66,600 to Ford, representing two-thirds of the settlement amount paid on behalf of Ford and the State.[2] Madco was also required to

---

[2] Ford argued that the settlement "as a whole" was $300,000 – including the $100,000 settlement involving Ford and the State, and the later $200,000 settlement involving Madco. Relying on those proportions, Ford argued that Madco should be

reimburse Ford for $43,188.43 in defense costs. Judgment was rendered in the total amount of $109,788.23.

## DISCUSSION

## I. FORD MAY NOT RECOVER FOR THE AMOUNTS PAID BY ITS INSURER

Madco argues that Ford was not entitled to recover the settlement funds and defense costs above the $25,000 deductible because those costs were borne by Old Republic, not Ford. Ford argues that Madco "is not entitled to a set off because Ford had its own insurance."

### A. The Settlement and Cost of Defense Amounts Above Ford's Deductible are not Included in the Measure of Ford's Damages

When a contractual indemnity obligation is breached, "the measure of damages … is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." (Civ. Code, § 3300[3]; *Elder v. Kutner* (1893) 97 Cal. 490, 493, overruled on other grounds in *Reachi v. National Auto. Casualty Ins. Co. of Los Angeles* (1951) 37 Cal.2d 808, 814; *Patent Scaffolding Co. v. Williams Simpson Constr. Co.* (1967) 256 Cal.App.2d 506, 510 *Atchison, T. & S. F. R. Co. v. James Stewart Co.* (1966) 246 Cal.App.2d 821, 826–827.) Detriment is a loss or harm suffered in person or property." (§ 3282.) Thus, a party aggrieved by a breach of a contractual indemnity obligation is entitled to recover the amount which will compensate them for any loss or harm suffered in person or property that was proximately caused by, or likely to result from, the breach. (§§ 3282, 3300.)

---

responsible for two-thirds of Ford's settlement and defense costs. The trial court adopted this approach.

[3] All further statutory references are to the Civil Code unless otherwise noted.

Here, the "loss … in property" (§ 3282) Ford suffered as a result of Madco's breach was the $25,000 deductible.  There is no dispute that amount is recoverable by Ford.

However, the $100,000 settlement and costs of defending Ford above the deductible were paid directly by Old Republic.[4]  Ford is not the "party aggrieved" (§ 3300) by those pecuniary losses.  These amounts are plainly not a "loss … suffered" (§ 3282) by Ford.  Consequently, they are not included in the measure of Ford's damages. (§§ 3282, 3300.)

B.  *Bramalea California, Inc. v. Reliable Interiors, Inc.*

A similar result was reached in *Bramalea California, Inc. v. Reliable Interiors, Inc.* (2004) 119 Cal.App.4th 468 (*Bramalea*).

Bramalea, a real estate developer, was sued by homeowners for construction defects.  (*Bramalea*, *supra*, 119 Cal.App.4th at p. 470.)  Bramalea incurred attorney fees defending the suit, which were paid by its insurer, Zurich.  (*Id* at p. 472.)  Bramalea tendered its defense to several subcontractors.  When they failed to accept the tender, Bramalea sued them to recover the posttender attorney fees it incurred in the homeowners' suit.

The Court of Appeal held that because Zurich paid the attorneys fees, Bramalea "suffered no out-of-pocket-loss" and could not recover against the subcontractors. (*Bramalea*, *supra*, 119 Cal.App.4th at p. 472.)

The court noted that Bramalea could have recovered if the collateral source rule had applied.  (*Bramalea*, *supra*, 119 Cal.App.4th at p. 472.)  That rule "allows an injured person to recover from the wrongdoer for damages suffered even if he has been compensated for the injury 'from a source wholly independent of the wrongdoer,' such as

_____

[4] Ford's attorneys billed defense costs directly to Old Republic's claims group and were fully compensated.  And the entire $100,000 settlement was paid by Old Republic.

7.

insurance.  [Citation.]"  (*Ibid*.)  But the rule does not apply "to damages for breach of contract.  [Citation.]"  (*Ibid*.)

Ford, like Bramalea, suffered no out-of-pocket loss (beyond the $25,000 deductible).  Ford, like Bramalea, seeks to recover against a subcontractor for attorney fees paid by its own insurer.  Under *Bramalea*, this is impermissible.[5]

### 1. *Ford May Not Recover Old Republic's Damages*

Ford attempts to distinguish *Bramalea*, arguing that there was no assignment or subrogation in *Bramalea*.  As we will explain, there was no relevant assignment or subrogation in the present case either.

We begin by noting that, generally, plaintiffs may only recover damages they personally sustain.  (See § 3300 [measure of damages pertains to detriment suffered by "party aggrieved"]; cf. Code Civ. Proc., § 367.)  There are several exceptions to this general rule, including those embodied in the concepts of assignment and subrogation. We will address each in turn.

#### a.  Old Republic Did Not Assign Its Claim for Damages to Ford

A cause of action arising out of a contractual obligation may be assigned to another by its owner.  (Civ. Code, § 954.)  Upon assignment, the assignee "stands in the shoes of his assignor, taking his rights and remedies ….' [Citation.]"  (*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1264.)  Generally, an "assignment

---

[5] We do part ways with *Bramalea*'s dicta.  At one point, the *Bramalea* court opined:  "Bramalea argues even if it is deemed to have transferred its claim for attorney fees to Zurich, it can pursue the action in its own name.  This would be true if Bramalea had assigned the claim to Zurich …."  (*Bramalea*, *supra*, 119 Cal.App.4th at p. 473.)  An assignment from Bramalea to Zurich would only have entitled Bramalea to pursue the claim in its own name if the assignment occurred after the lawsuit had been filed.  (See Code Civ. Proc., § 368.5.)  "Once a claim has been assigned … the assignor lacks standing to sue on the claim.  [Citation.]"  (*Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096.)

must be proved by clear and positive evidence .…"  (*Collins v. Welsh* (1934) 2 Cal.App.2d 103, 107.)

In an attempt to prove an assignment occurred here, Ford points to the following language from its policy with Old Republic:

"If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them."

It might be plausible to interpret this language as an assignment.  But, if anything, this language effects an assignment *from* Ford *to* Old Republic.[6]  If so, Old Republic is entitled to stand in Ford's shoes, not the other way around.[7]  Ford's assignment of rights *to* another entity cannot remedy the deficiencies in its own claim for damages.

### b.  Ford is Not Subrogated to Old Republic's Rights

Next we consider Ford's contention that it could recover Old Republic's damages on a subrogation theory.

"In a subrogation case, an insurer pays its insured on a claim and thereupon succeeds to any rights the insured might have against a third party for conduct giving rise to the claim, to the extent of the amount the insurer paid. [Citations.]"  (*21st Century Ins. Co. v. Superior Court* (2009) 47 Cal.4th 511, 533.)

Ford contends that the same policy text cited above (§ A.2.a, *ante*) demonstrates that the doctrine of subrogation applies here.  Again, that provision reads:

---

[6] If "the insured" and "us" are replaced with "Ford" and "Old Republic," respectively, the provision reads:  "If Ford has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to Old Republic."

[7] Indeed, it would be quite odd for an insurance policy to contain a provision assigning to the insured the right to recover for payments made to the insured under the policy.

9.

"If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them."

We agree this language likely creates a right of subrogation. But the subrogation right is in favor of Old Republic, not Ford. That is, Old Republic is subrogated to Ford's rights, not the other way around.[8] Thus, we can add this to the growing pile of evidence that Old Republic could have sued Madco in its own name. It does nothing, however, to fix what is lacking from Ford's claims above the deductible.

####    c.   Code of Civil Procedure Section 368.5 Does Not Permit Ford to Recover Old Republic's Damages in Its Own Name

Finally, Ford contends that it may recover Old Republic's damages in its own name by virtue of Code of Civil Procedure section 368.5.[9] That statute provides:

"An action or proceeding does not abate by the transfer of an interest in the action or proceeding or by any other transfer of an interest. The action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding." (Code Civ. Proc., § 368.5.)

Section 368.5 only applies when an interest is transferred *after* the action is filed. (See *Casey v. Overhead Door Corp.* (1999) 74 Cal.App.4th 112, 121 [statute applies "when a party transfers its interest in a *pending action* to another," italics added, fn. omitted] disapproved on other grounds by *Jimenez v. Superior Court* (2002) 29 Cal.4th 473; see *Greco v. Oregon Mut. Fire Ins. Co.* (1961) 191 Cal.App.2d 674, 684

---

[8] " 'In the case of insurance, subrogation takes the form of an *insurer's* right to be put in the position of the *insured* in order to pursue recovery from third parties ….' " (*Reliance Nat. Indemnity Co. v. General Star Indemnity Co.* (1999) 72 Cal.App.4th 1063, 1077, italics added.)

[9] In its appellate brief, Ford repeatedly refers to section 378.5, though it seems sufficiently clear the intent was to refer to section 368.5.

[predecessor statute applied "if the assignment occurs after suit has been filed"]; accord, Weil & Brown Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2010) ¶ 2:27.) The purported transfer of interest here was effected well before the present suit was filed. This statutory provision has no application to the facts of this case.

In sum, Ford is not entitled to recover for the damages sustained by Old Republic, a separate entity. If Old Republic wanted to recover the amounts it paid to fund the settlement and costs of defense, it could have intervened or brought a subrogation action in its own name. (See *Deutschmann v. Sears, Roebuck & Co*. (1982) 132 Cal.App.3d 912, 915–916 (*Deutschmann*).) It did not do so.

Ford's own recovery is limited to the amount which will compensate it for its pecuniary loss. (§§ 3300, 3282.) That amount is $25,000.

## II. FORD'S REMAINING CONTENTIONS DO NOT ALTER OUR CONCLUSION

### A. The Equitable Considerations Identified by Ford and the Trial Court Do Not Militate Against Our Holding

In reaching a contrary conclusion, the trial court held "the equities favor holding Madco accountable for, at a minimum, some portion of the defense costs."

First, we note that a judgment against Madco for the $25,000 out-of-pocket loss suffered by Ford does hold Madco accountable for "some portion" of the defense costs.

Second, while this consideration may weigh in favor of permitting recovery against Madco, it offers no guidance on *who* should be allowed to recover against Madco. As we noted above, Old Republic could have intervened or brought a subrogation suit against Madco in its own name. (See *Deutschmann*, *supra*, 132 Cal.App.3d at pp. 915–916.) None of the principles we set forth in our analysis would limit Old Republic's potential recovery against Madco. Thus, the legitimate interest in holding an indemnitor accountable for the indemnitee's defense costs and liability is not defeated by limiting litigants' recovery to damages they personally sustained.

11.

Third, and perhaps most importantly, express indemnity is not subject to equitable considerations. (*Prince v. Pacific Gas & Electric Co.* (2009) 45 Cal.4th 1151, 1158.)

In a similar vein, the trial court was also concerned that "when an indemnitee such as Ford is insured, there is no point to defending it or indemnifying … since there will be no obligation to pay." We disagree. When an indemnitor wrongfully refuses to defend an insured indemnitee, the indemnitor risks an action brought directly by the insurer. (See *Bramalea*, *supra*, 119 Cal.App.4th at p. 475, fn. 5.) In other words, by failing to defend or indemnify, Madco risked a subrogation action by Old Republic.

The question we resolve today is not whether the defense costs and $100,000 settlement are generally recoverable, but rather who may seek to recover them.

1. *Rossmoor Sanitation, Inc. v. Pylon, Inc.*

Ford relies heavily on *Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622 (*Rossmoor*). In that case, Rossmoor Sanitation, Inc. hired Pylon, Inc. to construct a sewage pump station and sewer lines. (*Id.* at p. 626.) In the employment contract, Pylon agreed to indemnify Rossmoor for damages and costs incurred in the event of a lawsuit. (*Ibid.*) Pylon also agreed to obtain insurance and name Rossmoor an additional insured. (*Ibid.*) During construction, two Pylon employees died when a trench caved in. (*Id.* at p. 627.) The employees' heirs obtained a $267,000 tort judgment against Rossmoor. (*Ibid.*) Rossmoor's insurer, INA, paid the judgment and defense costs. (*Ibid.*)

Rossmoor filed a declaratory relief action against Pylon and Pylon's insurer, U.S. Fire. (*Rossmoor*, *supra*, 13 Cal.3d at p. 627.) U.S. Fire cross-complained against INA, seeking apportionment. (*Ibid.*) Both policies (Rossmoor's with INA and Pylon's with U.S. Fire) contained " 'other insurance' " clauses stating "that an apportionment shall be made if the insured has other insurance against a loss covered by the policy." (*Id.* at p. 626, fn. omitted.)

The bulk of the Supreme Court's opinion dealt with the inapplicable issue of whether Rossmoor was actively or passively negligent. (*Rossmoor*, *supra*, 13 Cal.3d at

12.

pp. 628–633.) In part II of the opinion, the high court dealt with whether U.S. Fire was entitled to an apportionment of responsibility between itself and INA. The resolution of this question centered around which of two contractual provisions would control: The indemnity clause in the Rossmoor-Pylon contract, or the "other insurance" clauses in the two insurance policies. Ultimately, the Supreme Court concluded that the indemnity clause prevailed over the "other insurance" clauses because apportioning responsibility would effectively negate the indemnity clause. (*Id.* at p. 634.)

Clearly, none of these issues considered in *Rossmoor* are directly on point.[10] Moreover, the "key distinction between *Rossmoor* and the case at bar is that *Rossmoor* involved a dispute between two primary carriers" (*JPI Westcoast Construction, L.P. v. RJS & Associates, Inc*. (2007) 156 Cal.App.4th 1448, 1460, italics removed), while the parties in this case are *insureds*.

Ford argues that because it was already a party to the plaintiffs' lawsuit, it was "better" for Ford, rather than Old Republic, to sue Madco. "This option," Ford contends, "is consistent with the holding of *Rossmoor*, which contemplates that an, 'insurer on paying a loss is subrogated *on a corresponding amount* to the insured's right of action against any person responsible for the loss.' [Citation.]" But the language of *Rossmoor* cited in Ford's argument shows why that case is distinguishable. The notion that an insurer "is subrogated … to the insured's right of action" (*Rossmoor*, *supra,* 13 Cal.3d at p. 633) is not novel; but the contention that an *insured* is subrogated to the *insurer*'s right to recover for amounts paid under the policy is. Such a concept is not supported by *Rossmoor*.

---

[10] The trial court also observed that *Rossmoor* is not "directly on point." However, the trial court ultimately concluded that *Rossmoor*'s analysis was "applicable."

2. *Interstate Fire & Casualty Ins. Co. v. Cleveland Wrecking Co.*

Ford also relies on *Interstate Fire & Casualty Ins. Co. v. Cleveland Wrecking Co.* (2010) 182 Cal.App.4th 23 (*Interstate Fire*), which is even more readily distinguishable than *Rossmoor*. In that case, Webcor Construction, Inc. subcontracted with Cleveland Wrecking Company (Cleveland) to perform work on a construction project. (*Id.* at p. 28.) In the subcontract, Cleveland agreed to indemnify Webcor for claims arising out of Cleveland's operations. (*Ibid.*) Another subcontractor's employee was injured by the allegedly negligent conduct of Cleveland's workers. (*Id.* at p. 29.) The injured employee sued Webcor and Cleveland. (*Ibid.*)

Webcor tendered its defense and indemnification to Cleveland pursuant to the subcontract. (*Interstate Fire*, *supra*, 182 Cal.App.4th at p. 29.) Cleveland denied the tender. (*Ibid.*) Webcor also tendered to the insurer of another subcontractor,[11] Interstate Fire and Casualty Insurance Company (Interstate). (*Ibid.*) Interstate accepted Webcor's tender. (*Ibid.*)

Webcor settled with the injured employee. (*Interstate Fire*, *supra*, 182 Cal.App.4th at p. 30.) Interstate funded the settlement and paid Webcor's defense costs. (*Ibid.*)

Interstate filed a complaint in subrogation against Cleveland, alleging Cleveland had breached the subcontract by failing to defend and indemnify Webcor. (*Interstate Fire*, *supra*, 182 Cal.App.4th at p. 30.) Cleveland demurred to Interstate's complaint, arguing that Interstate lacked the superior equities required for subrogation and that Webcor did not incur damages by Cleveland's alleged breach of the indemnification provision. (*Id.* at p. 31.)

---

[11] The other subcontractor was Delta Steel Erectors, for whom the injured employee worked.

*Interstate Fire* itself explains why *Bramalea* is more apt to the present case. *Interstate Fire* distinguished *Bramalea* because the "collateral source rule … pertains to whether an *insured* may recover on its own behalf" whereas *Interstate Fire* dealt with "whether the *insurer* can recover in subrogation on its insured's contractual indemnification claim." (*Interstate Fire*, *supra*, 182 Cal.App.4th at p. 35, original italics.)  The present case involves "whether an *insured* may recover on its own behalf" not "whether the *insurer* can recover in subrogation." (See *ibid*.)  On *Interstate Fire*'s own terms, the present case is closer to *Bramalea*.

**CONCLUSION**

Ford may only recover for its own pecuniary losses, not those suffered by a separate entity.  (§§ 3300, 3282; see generally *Bramalea*, *supra*, 119 Cal.App.4th 468.)

When the evidence is sufficient to sustain some but not all alleged damages, a reviewing court may "reduce the judgment to the amount supported by the evidence. [Citations.]" (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 533.)  We therefore reduce the judgment to $25,000.

**DISPOSITION**

The judgment in favor of Ford against Madco is modified to award Ford a total of $25,000 in damages.  As modified, the judgment is affirmed.  Madco shall recover its costs on appeal.


_____

Poochigian, Acting P.J.

WE CONCUR:


_____

Franson, J.


_____

Peña, J.