Filed 2/2/21  BFCAP Investments v. Lifehouse Parkview etc. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| BFCAP INVESTMENTS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>LIFEHOUSE PARKVIEW PROPERTIES, et al.,<br><br>Defendants and Respondents. | B303550<br><br>(Los Angeles County Super. Ct. No. SC128812) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed.

Polsinelli, Jonathon E. Cohn for Plaintiff and Appellant.

Shumener, Odson & Oh, Betty M. Shumener, Benjamin L. Hicks for Defendants and Respondents.

## INTRODUCTION

In this breach of contract action, plaintiffs Kingston Healthcare Center, LLC and BFCAP Investments, LLC contracted to purchase licenses to operate a skilled nursing facility and lease its parcel of property from defendants Lifehouse Parkview Operations, LLC (OpCo) and Lifehouse Parkview Properties, LLC (PropCo). The parties entered into a series of agreements relating to the purchase; one issue the agreements addressed was which party would be responsible for paying quality assurance fees (QAFs), state-imposed licensing fees on skilled nursing facilities. Plaintiffs alleged that defendants breached the parties' contracts because defendants were required to pay all outstanding QAFs due prior to the close of the sale, and they did not.

Defendants moved for summary judgment, asserting in part that Kingston—not BFCAP—paid the outstanding QAFs, so BFCAP could not prove the element of damages on its breach of contract claim. In their opposition, plaintiffs submitted an indemnity agreement created after defendants' motion for summary judgment was filed, which stated that BFCAP agreed to indemnify Kingston for any losses associated with the QAFs or the litigation. Plaintiffs argued that the indemnity agreement constituted evidence of BFCAP's damages resulting from defendants' breach.

The trial court granted the motion and entered summary judgment for defendants against BFCAP. BFCAP appealed, asserting that the indemnity agreement is evidence of its damages. BFCAP also contends on appeal that it paid a higher price for the lease in exchange for defendants' promise to pay the

2

outstanding QAFs, and therefore it was damaged because it did not receive the benefit of this bargain.

We affirm. The scope of summary judgment is limited to the pleadings, and plaintiffs cannot avoid summary judgment with a new indemnity agreement that extends beyond the scope of the complaint. In addition, BFCAP did not assert in the trial court that the sale price of the lease constituted damages, so that contention has been forfeited and may not be asserted for the first time on appeal.

## BACKGROUND

### A.    Factual background

For purposes of this appeal, the following facts are generally undisputed. PropCo leased the "land, improvements, and certain personal property" relating to a skilled nursing facility in Bakersfield, California (the facility). OpCo subleased, operated, and held the license for the facility. The parties entered into a series of three agreements in which BFCAP would purchase PropCo's lease of the property, and Kingston would acquire OpCo's facility license.

The parties' dispute centers around which party was liable for the payment of QAFs that accrued before the sale. QAFs, according to the parties, are "licensing fees administered by the California Department of Health Care Services ('DHCS') and imposed on skilled nursing facilities." (See Health & Saf. Code, § 1324.21.) Plaintiffs explain that QAFs are "charged by multiplying the total number of bed days reported by a facility times a rate set by DHCS." "When a skilled nursing facility fails to pay all or part of the quality assurance fee within 60 days of the date that payment is due, the department may deduct any unpaid assessment, including any interest and penalties owed,

3

from any Medi-Cal payments to the facility until the full amount is recovered." (Health & Saf. Code, § 1324.22, subd. (e)(2)(A).) DHCS will "continue to assess and collect the quality assurance fee, including any previously unpaid quality assurance fee, and any interest or penalties owed, from each skilled nursing facility, irrespective of any changes in ownership or ownership interest or control or the transfer of any portion of the assets of the facility to another owner." (*Id.*, subd. (f)(1).)

On January 14, 2016, defendants and BFCAP entered into the Purchase and Sale Agreement (PSA) to sell PropCo's leasehold interests to BFCAP. Addressing the outstanding QAFs, the PSA stated, "Effective as of the Closing Date, [BFCAP] shall be deemed to assume and agree to pay, jointly and severally with [Kingston], Quality Assurance Fees accrued but unpaid with respect to the Facility as of the Closing Date up to the QA Fee Assumed Amount. The QA Fee Assumed Amount shall be applied to and credited against the Purchase Price at Closing." The purchase price was $3.1 million. The PSA defined the "QA Fee Assumed Amount" as "$928,746, which is the amount of Quality Assurance Fees accrued but unpaid with respect to the Facility as of the Closing Date." The PSA further stated that "in the event that Quality Assurance Fees accrued but unpaid as [of] the Closing Date are determined to be less than the QA Fee Assumed Amount, then [BFCAP] shall promptly reimburse [defendants] for the difference. If the actual amount of Quality Assurance Fees accrued but unpaid as of the Closing Date exceed the QA Fee Assumed Amount, (a 'QA Deficiency'), then [defendants] shall be responsible for the QA Deficiency as part of the True Up contemplated" by another section of the PSA.

4

The same day, OpCo and Kingston entered into the Management and Operations Transfer Agreement (MOTA), which addressed transferring operations of the facility from OpCo to Kingston. The MOTA stated that Kingston "jointly and severally with [BFCAP] assumes and agrees to pay Quality Assurance Fees . . . accrued but unpaid with respect to the Facility as of the Operations Transfer Date up to the QA Fee Assumed Amount, as that term is defined in the PSA."

According to plaintiffs, after the parties signed the PSA and MOTA, the non-party "landlords refused to accept the structure as agreed upon in the PSA whereby Plaintiffs would be responsible for the previously accrued QAFs in exchange for a lower purchase price." In addition, "days before the close of the transaction, Defendants informed Plaintiffs they required an extra $200,000 in the purchase price, or else the deal would fail," because defendants' "investors want to kibosh this deal and maybe go to someone else." Thus, on March 22, 2016, defendants and BFCAP signed an "Amendment to Purchase and Sale Agreement" (Amendment). The Amendment stated, in part, that the parties "agree that Quality Assurance Fees accrued prior to the Closing Date shall remain the responsibility of [defendants], [BFCAP] shall receive no credit against the Purchase Price for Quality Assurance Fees, and no Quality Assurance Fees accrued prior to the Closing Date shall be among the Assumed Liabilities." The purchase price was raised to $3.3 million. The MOTA was not similarly amended.

The transaction was completed on August 31, 2016. According to plaintiffs, "[O]nce Kingston assumed operations of the Facility, DHCS initiated a withhold of Kingston's revenue in

5

the amount of $517,000 for QAFs attributable to the years 2005-2008 and 2014-2015."

Plaintiffs sued defendants on February 8, 2018. In their third amended complaint, the operative pleading at the time of the motion for summary judgment, plaintiffs asserted five causes of action. The only cause of action relevant to the appeal is the second cause of action, "breach of contract under PSA," asserted by both BFCAP and Kingston; the other four causes of action were asserted by Kingston alone.[1] In this cause of action, plaintiffs alleged that "Defendants defaulted on their obligations pursuant to the Amendment which obligated them to pay for the unpaid QAFs that was [*sic*] due and owing by Defendants at the time of closing." Plaintiffs asserted that defendants were required to indemnify BFCAP for the QAFs, and that Kingston was a third-party beneficiary to the PSA and the Amendment.

**B.     Summary judgment**

1.     *Motion*

Defendants moved for summary judgment on July 9, 2019, asserting in part that BFCAP did not suffer any damages from

---

[1]In the first cause of action for breach of contract, Kingston alleged defendants breached the MOTA by failing to reimburse Kingston for the QAFs, and in the third cause of action for fraud, fourth cause of action for negligent misrepresentation, and fifth cause of action for breach of the implied covenant of good faith and fair dealing, Kingston alleged that defendants failed to accurately represent the state of the facility before the sale. The court granted defendants' motion for summary adjudication of the fraud and misrepresentation claims. Defendants represent in their respondents' brief that Kingston's contract claim regarding the QAFs has been settled.

6

unpaid QAFs.[2] Defendants asserted that in discovery, "BFCAP admit[ted] it has not paid a penny in QAFs, Defendants paid the only QAFs reasonably owed prior to closing, and Kingston is contractually obligated to pay the QAFs at issue" under the MOTA. Defendants submitted interrogatory responses in which BFCAP stated that it had not paid any QAFs. Defendants also submitted evidence demonstrating that on March 31, 2016, OpCo paid DHCS $931,150.54 in outstanding QAFs—slightly more than the "QA Fee Assumed Amount" in the PSA. Defendants further argued, "Since the only alleged breach is a failure to indemnify BFCAP for QAFs, and BFCAP has paid none, there is nothing to indemnify." Defendants stated that plaintiffs "claim there are fees in addition to those contemplated by the PSA, [but] there is no admissible evidence that those fees are owed by Defendants under the PSA."

Defendants also contended that because Kingston was not a party to the PSA, it could not recover for breach of the PSA. Defendants noted that the PSA expressly barred any third-party beneficiary claims.

### 2. *Opposition and reply*

In their opposition, plaintiffs stated that the QA Fee Assumed Amount in the PSA was an estimate, which was "only a ballpark for purposes of defining the Assumed Liabilities that BFCAP agreed to purchase." Thus, defendants' payment of a similar amount to DHCS did not necessarily satisfy defendants' contractual obligations, because the PSA contemplated that

---

[2]The portions of defendants' motion for summary judgment pertaining to causes of action not relevant to this appeal are not summarized here.

7

defendants would also pay any "QA Deficiencies" that were "accrued but unpaid as of the Closing Date . . . as part of the True Up contemplated" in the PSA.

Plaintiffs explained that after the parties signed the PSA and MOTA, the non-party "landlords refused to accept the structure as agreed upon in the PSA whereby Plaintiffs would be responsible for the previously accrued QAFs in exchange for a lower purchase price." Defendants and their investors also wanted an extra $200,000 as part of the purchase price. Therefore, the parties entered into the Amendment, in which "Defendants agreed to be responsible for all of the previously accrued QAFs," an amount "*not* limited to the QA Fee Assumed Amount," and BFCAP would no longer receive a credit against the purchase price for outstanding QAFs. Plaintiffs stated, "In exchange for Defendants' promise to pay all of the previously accrued QAFs and Defendants' request for more money, the parties modified the purchase price to be $3,300,000," $200,000 more than the purchase price in the PSA.

BFCAP noted that the MOTA was not similarly amended, which "resulted in even more ambiguity and confusion as to the terms of the agreement and as to who was ultimately responsible for the QAFs. The ambiguity and confusion underlies the entire basis for the litigation in this case and cannot be easily adjudicated without a trial on the facts." Plaintiffs argued that "Defendants failed to pay all QAFs accrued but unpaid prior to the transfer date as they had agreed. Because of that failure, DHCS recouped [the unpaid QAFs] from Kingston's revenue."

BFCAP rejected defendants' argument that BFCAP had not suffered damages because DHCS withheld QAFs from only Kingston. BFCAP asserted that it had "agreed to indemnify

Kingston from and against any and all claims, damages, liabilities, judgments, awards, costs, losses and expenses resulting from this litigation." Plaintiffs submitted as evidence a "Letter of Indemnification" signed on August 13, 2019—more than a month after defendants filed their motion for summary judgment. The letter stated that BFCAP agreed to indemnify Kingston from any losses, damages, or legal fees "resulting from, or being in any way connected with the payment of the QAFs and the litigation regarding same." BFCAP argued that "because it has agreed to indemnify Kingston, BFCAP is also directly harmed by Defendants' conduct." Plaintiffs did not assert any other bases for BFCAP's alleged damages.

In their reply, defendants asserted that BFCAP's "post-hoc agreement to indemnify co-plaintiff Kingston is not damages. BFCAP and Kingston are *Plaintiffs* in this lawsuit; there is no liability for BFCAP to indemnify. That BFCAP now volunteers to indemnify Kingston for hypothetical liability is not damages." Defendants noted that BFCAP's breach of contract claim was based solely on an allegation that defendants failed to indemnify BFCAP for QAFs, but BFCAP had not paid any QAFs. Defendants also argued that BFCAP could not assert new damages that were not alleged in the pleadings by creating a "sham indemnity agreement" with Kingston.

3.  *Court ruling*

In a written ruling, the court granted defendants' motion as it pertained to BFCAP. The court stated that BFCAP "cannot proceed" on its breach of contract cause of action, because "it has admitted that it did not pay any QAFs nor did it have any payments withheld. BFCAP's only alleged damages stem from the fact that it agreed to indemnify Kingston for the $517,000.00

9

in withheld payments. Plaintiffs have admitted that BFCAP did not have any QAFs withheld, and that it entered into the indemnity agreement with Kingston on August 13, 2019. . . . This agreement cannot be a basis for BFCAP to collect damages that it would not have otherwise suffered had it not voluntarily agreed to incur a debt to Kingston. [¶] For the foregoing reasons, the MSJ to plaintiffs' contract causes of action is GRANTED as to BFCAP because that plaintiff has suffered no damages . . . ." The court entered judgment in favor of defendants and against BFCAP. BFCAP timely appealed.

## DISCUSSION

BFCAP asserts on appeal that the trial court erred in finding there was no triable issue of material fact as to damages to BFCAP. Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "We review the trial court's grant of summary judgment de novo and decide independently whether the parties have met their respective burdens and whether facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "A cause of action has no merit if . . . [o]ne or more of the elements of the cause of action cannot be separately established." (Code Civ. Proc., § 437c, subd. (o)(1).)

10

"A breach of contract is not actionable without damage." (*Bramalea California, Inc. v. Reliable Interiors, Inc.* (2004) 119 Cal.App.4th 468, 473.) BFCAP admits that "BFCAP had not yet paid any damages related to the QAF issue, and the only recoupment had come out of Kingston's revenue stream, not BFCAP's." BFCAP asserts that the "Indemnification Agreement established, at a minimum, a dispute of fact as to whether BFCAP had suffered any damages and should have been determined by a trier by fact [*sic*]. However, the trial court erred in rejecting this plain evidence of the Indemnification Agreement."

Defendants point out that the indemnity agreement did not exist at the time plaintiffs filed their complaint, and plaintiffs did not allege any damages based on an indemnity agreement between the plaintiffs. They argue that a motion for summary judgment is limited to the pleadings, and plaintiffs cannot defeat summary judgment by creating a new, unpled basis for liability.[3]

We agree with defendants. It is well established that the pleadings "'set the boundaries of the issues to be resolved at summary judgment.'" (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250; see also *Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 629 ["The pleadings determine the issues to be addressed by a summary judgment motion"]; *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253 (*Laabs*) ["'The pleadings delimit the

_____

[3] Defendants assert on appeal that there was also no evidence demonstrating a triable issue of fact as to whether they breached the PSA. The trial court addressed only the element of damages, and we do not address defendants' contentions regarding a breach.

11

issues to be considered on a motion for summary judgment'"].) Here, in the statement of facts in the third amended complaint, plaintiffs alleged, "The state recouped QAFs from Kingston." In the only cause of action that includes BFCAP, plaintiffs asserted that "Defendants breached the PSA and the Amendment by failing to pay the QAFs and failing to indemnify BFCAP according to the terms of the agreements." Plaintiffs also alleged that "the PSA and the Amendment show a clear intent to benefit Kingston, a third-party beneficiary to both the PSA and Amendment." They asserted that plaintiffs "suffered damages proximately caused by Defendants' breach of the PSA and Amendment." Plaintiffs did *not* allege that BFCAP was separately damaged due to an obligation to indemnify Kingston for payment of QAFs. Nor did plaintiffs allege that defendants' actions affected any obligations between the two plaintiffs. The indemnity agreement was not created until August 2019—eight months after the third amended complaint was filed in December 2018, and a month after defendants' motion for summary judgment was filed in July 2019.

BFCAP may not rely on this new obligation to defeat summary judgment. "Evidence offered on an unpleaded claim, theory, or defense is irrelevant" in an opposition to a motion for summary judgment "because it is outside the scope of the pleadings." (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637 fn. 3; see also *Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264 ["To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings."].) "It would be patently unfair to allow plaintiffs to defeat [defendants'] summary judgment motion by allowing them to present a 'moving target' unbounded by the pleadings."

12

(*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 176.) If a plaintiff determines that its pleadings must be expanded to address an issue raised in a motion for summary judgment, "it is incumbent on plaintiff to seek leave to amend the complaint either prior to the hearing on the motion for summary judgment, or at the hearing itself." (*Laabs, supra,* 163 Cal.App.4th at p. 1258.) Plaintiffs made no such effort here, and the trial court was correct in rejecting plaintiffs' indemnity agreement as evidence of BFCAP's damages.

BFCAP also asserts that the trial court erred by determining "that the Indemnification Agreement was not valid because it was entered into voluntarily." It also contends the court erred in "holding the Indemnification Agreement invalid because of its date of execution." These arguments misstate the record. In holding that the indemnity agreement did not support BFCAP's claim for breach of contract against defendants, the court did not find that the indemnity agreement itself was invalid. Instead, the court simply found that the indemnity agreement "cannot be a basis for BFCAP to collect damages" from defendants. Thus, we do not address BFCAP's contentions regarding the validity of the indemnity agreement.

BFCAP asserts an alternative argument that it suffered damages because in agreeing to the Amendment, it consented to pay $200,000 more for the lease in exchange for defendants' payment of the outstanding QAFs. It asserts, "BFCAP did not get what it bargained for – which directly damaged BFCAP. [¶] BFCAP would not have paid an additional $200,000 above the purchase price if [defendants] had not agreed to pay the outstanding QAFs." Defendants respond that BFCAP did not make this argument in the trial court or submit any evidence to

support such a finding. Defendants also assert that the increased purchase price does not constitute damages, and that BFCAP is, in essence, attempting to assert a new cause of action for fraudulent inducement.

Defendants are correct that BFCAP did not assert in the trial court that it suffered damages in the form of an increased purchase price. The third amended complaint says nothing about the purchase price reflecting damages. In the recitation of facts in plaintiffs' opposition to defendants' motion for summary judgment, plaintiffs discussed the terms of the Amendment, including the increased sale price demanded by defendants "days before the close of the transaction," and the shift of the burden to pay outstanding QAFs from BFCAP to defendants due to the "refusal of the landlords to consent to the original transaction." However, plaintiffs did not contend in their opposition that the increased sale price constituted damages resulting from defendants' breach. Plaintiffs also did not support such a contention in the separate statement. For example, for the material fact in which defendants noted BFCAP's interrogatory responses stating that it had not paid any outstanding QAFs, plaintiffs stated that the fact was undisputed, but that BFCAP had suffered damages due to the August 2019 indemnity agreement. Plaintiffs did not point to any evidence to support a finding that BFCAP's damages stemmed from the increased purchase price.

"[A] factual question . . . cannot be raised for the first time on appeal, particularly . . . [in] an appeal from a motion for summary judgment [where] appellants did not identify this as a fact in their separate statements." (*Los Angeles Unified School District v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480,

14

at pp. 496, 497; see also *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488 fn. 3 ["It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal."].) In addition, a plaintiff may not "change [its] theory of the case for the first time on appeal." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 321 fn. 10.) BFCAP did not assert a claim for damages in the trial court based on the sale price in the Amendment, and it may not assert it for the first time here.

In short, BFCAP alleged that defendants breached the Amendment by failing to pay all outstanding QAFs. The evidence showed that Kingston, not BFCAP, incurred damages when it paid the outstanding QAFs. Without evidence that BFCAP was damaged by defendants' breach, summary judgment was warranted, and on appeal BFCAP has failed to demonstrate error.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COLLINS, J.

We concur:

MANELLA, P. J.

WILLHITE, J.

15